FRANCIS L. DUGGAN *vs.* THIRD DISTRICT COURT OF EASTERN MIDDLESEX.

Middlesex. May 11, 1937. — September 17, 1937.

Present: RUGG, C.J., CROSBY, PIERCE, & QUA, JJ.

*Civil Service. Municipal Corporations*, Officers and agents. *Police. Cambridge.*

The officer of a police department having the power to remove policemen, after hearing under G. L. (Ter. Ed.) c. 31, § 42A, and sustaining charges against a policeman who had been suspended pending the hearing, had authority to remove the policeman as of a date subsequent to the offences found to have been committed and to the date of suspension but before the date of the hearing.

An ordinance of the city of Cambridge, adopted under § 5 of G. L. (Ter. Ed.) c. 43, when the city was under a Plan B form of charter, abolishing its department of public safety and establishing a police department in charge of a chief of police, constituted him the officer having authority to remove a policeman under G. L. (Ter. Ed.) c. 31, § 42A.

PETITION for a writ of certiorari, filed in the Supreme Judicial Court for the county of Middlesex on February 11, 1937.

. The petition was heard by *Donahue*, J., who ordered it dismissed and reported the case for determination by the full court.

*J. W. Lyons,* (*J. A. DeGuglielmo* with him,) for the petitioner.

*R. Clapp,* Assistant Attorney General, for the respondent.

PIERCE, J. This is a petition praying that a writ of certiorari issue requiring the respondent to certify the "records of his doings relating to or touching" a certain matter (stated in the petition) in his court, to the end that the "ruling of said court may be reversed, and its . . . order dismissing said proceedings may be quashed"; and for such other relief as law and justice may require. The petition for the writ was heard by a single justice of this court. Annexed to it was a copy of all the proceedings of the

respondent, and it was "stipulated that the petition for the writ of certiorari contains the full, extended and accurate record of the entire proceedings and actions of the respondent in the above entitled matter and that the same may be used and treated by the court as if such record had been actually returned by the respondent herein. The respondent adopts such record as the record which he himself would have made to the court on a return signed by him." The single justice ordered the petition dismissed, as matter of law, and reported the case upon the petition, answer and stipulation for the determination of the full court.

It appears from a "Petition for Judicial Review" addressed to the "Honorable the Justice of the Third District Court of Eastern Middlesex," that the petitioner, Francis L. Duggan, on February 28, 1928, was duly appointed a member of the police force of the city of Cambridge. It further appears from the said petition and the reported proceedings thereon, that on September 13, 1936, said Duggan was a member of the police department in good standing; that on said day he received a notice from the chief of police, Timothy F. Leahy, to the effect that he was "temporarily suspended" from the police department "pending charges to be preferred" against him; that on September 13, 1936, he received a communication from the said chief of police, in substance, that he contemplated removing Duggan from the police department for the reasons, (1) "Violation of the rules and regulations for the government of the Cambridge Police Department. To Wit: Neglect of duty and conduct unbecoming a police officer"; (2) "That you failed to pull your 5:45; 6:15; 6:45 and 7:15 A.M., duty calls on the morning of September 13, 1936, and did not give any excuse"; (3) "That you failed to report off duty at 8:00 A.M., on the morning of September 13, 1936"; and (4) "That you were under the influence of intoxicating liquor on the morning of September 13, 1936, while on duty and in uniform." This communication of the chief of police further read: "I will grant you a hearing on the aforesaid matters and the contemplated removal

at my office on September 19, 1936, at 10:00 A.M., at which time and place I will hear the evidence in the above case. You will bring any witnesses or other evidence that you may have." After various continuances a hearing was had on October 15, 1936, at the office of the chief of police, who presided. On October 16, 1936, the said Timothy F. Leahy notified the petitioner that he was found guilty of all charges and ordered his dismissal from the police department, the order to take effect "on and after 5:30 P.M., roll call on Friday, September 16, 1936."

During the interval between September 13, 1936, and October 16, 1936, inclusive, the city of Cambridge had a mayor who took no part in these proceedings shown by the record.

On December 2, 1936, the "Petition for Judicial Review," filed in the Third District Court of Eastern Middlesex on October 21, 1936, after appropriate pleadings came on to be heard before the respondent, Arthur P. Stone, Esquire, as justice of said court. At the trial there arose one question of fact and two legal issues. The question of fact, as stated in the petitioner's brief, was whether the petitioner "was under the influence of intoxicating liquors" on the morning of September 13, 1936, or whether he "was suffering from traumatic epilepsy, which was the result of injuries incurred by the petitioner in the course of his duties as a police officer." On this issue of fact the respondent found that the petitioner from 5:13 until 9:10 on the morning of September 13, 1936, was "under the influence of liquor but was also suffering from the beginnings of an attack of epilepsy which afterwards increased in severity." The petitioner concedes that "this question of fact is not a proper subject for argument on this appeal."

This leaves for consideration two issues of law which go to the essence of the respondent's decision and order.

The first issue is, Had the chief of police after a full hearing, which terminated October 15, 1936, authority to remove the petitioner as of September 16, 1936? In this regard the contention of the petitioner is that the order, "to take effect . . . September 16, 1936," was in legal effect a

removal before the hearing to which the petitioner was entitled under G. L. (Ter. Ed.) c. 31, § 42A. This position is unsound. The petitioner was suspended on September 13, 1936, pending charges to be preferred against him. A hearing was had on the charges against him on October 15, 1936. No order was made until after its conclusion. The dismissal was then made, to be effective at a date prior to the hearing, but at a date subsequent to the acts of which the petitioner was found guilty. Why the removal was not made as of September 13, 1936, when the petitioner was temporarily suspended pending charges to be preferred, rather than as of "September 16, 1936," is not disclosed by the record. We think the chief of police acting in a *quasi* judicial capacity had authority under the circumstances disclosed to direct his order to be effective as of a prior date, which was subsequent to the suspension.

The second question of law is raised by the petitioner's contention that the chief of police had no power to appoint police officers, and that therefore he had no power to remove officers under the provisions of G. L. (Ter. Ed.) c. 31, § 42A. The petitioner directs attention to the provisions of G. L. (Ter. Ed.) c. 39, § 1, which read: "Except as otherwise provided by law, city councils shall have the powers of towns; boards of aldermen shall have the powers, perform the duties and be subject to the liabilities of selectmen, except with respect to appointments, and the mayor shall have the powers, perform the duties and be subject to the liabilities of selectmen with respect to appointments, but all his appointments shall be subject to confirmation and rejection by the aldermen, and upon the rejection of a person so appointed the mayor shall within one month thereafter make another appointment. In cities having a single legislative board other than a board of aldermen, such board shall, so far as appropriate and not inconsistent with the express provisions of any general or special law, have the powers, perform the duties and be subject to the liabilities of the board of aldermen"; of c. 40, § 1, which read: "Cities and towns shall be bodies corporate, and, except as otherwise expressly provided, shall have the powers, exercise the privi-

leges and be subject to the duties and liabilities provided in the several acts establishing them and in the acts relating thereto. Except as otherwise expressly provided, cities shall have all the powers of towns and such additional powers as are granted to' them by their charters or by general or special law, and all laws relative to towns shall apply to cities"; of c. 41, § 96: "Selectmen may appoint police officers, who shall hold office during their pleasure"; and of c. 41, § 3: "Officers of cities shall have the powers and be subject to the liabilities of the corresponding town officers, if no other provisions are made relative to them. Women shall be eligible to city offices to the same extent as to town offices, notwithstanding any special law or charter to the contrary."

By c. 364 of St. 1891, an act was passed in amendment of the charter of the city of Cambridge, the material provisions of which are as follows: § 8: "The executive powers of said city and all the executive powers now vested in the mayor and in the board of aldermen, and in the surveyors of highways, shall be and hereby are, vested in the mayor, to be exercised through the several officers and boards of the city in their respective departments, under his general supervision and control. He shall at all times have the control and direction of the police force . . ."; § 34: "All heads of departments and boards of the city, except the chief of police and the chief engineer of the fire department, shall appoint their respective subordinates, for such terms of service respectively, as are or may be fixed by law or ordinance, which appointments shall be forthwith certified by them to the mayor; the said officers and boards may remove such subordinates for such cause as they shall assign in writing in the order for removal, which order shall be forthwith communicated to the mayor." By § 8 "the control and direction of the police force" are specifically given to the mayor; and by § 34 the chief of police is excluded from those having power to appoint their subordinates. By St. 1912, c. 611, the police and the fire departments of the city of Cambridge were consolidated into a department of public safety, commanded by a commis-

sioner of public safety who was appointed by the mayor and was given, under § 4 of said chapter, authority "to determine the number of and to appoint the members and clerk of the department of public safety and to fix their compensation, organize and administer the said department . . . ." Section 7 of said c. 611 reads: "All the provisions of the civil service laws and regulations and all laws applying to police officers and firemen, except such as relate to the authority of the mayor and board of aldermen of the city, shall remain in full force and effect. Promotions shall be made only by competitive civil service examination and from the rank next inferior to the position to be filled." Section 8 of said c. 611 provides that "All acts and parts of acts inconsistent herewith are hereby repealed." By § 5 the chief of the police force and of the fire force were made subordinates of the commissioner of public safety with no power except to make rules for discipline in their respective forces, with the approval of the commissioner.

The commissioner of public safety, who had the power of appointment as a matter of law, had the power of removal. Under §§ 4 and 7 of St. 1912, c. 611, the power of removal was to be carried out with relation to existing civil service laws and other laws connected with policemen, but all prior laws relating to the authority of the mayor were specifically excepted from any application to the police officers and firemen by § 7 of this act. The effect of §§ 7 and 8 of this act was to repeal all provisions of the then existing charter of the city of Cambridge as it stood amended by St. 1891, c. 364, in so far as it provided for the authority of the mayor over the police.

While the statute of 1912 was in effect in the city of Cambridge, that city in 1916 adopted charter Plan B, now embodied in G. L. (Ter. Ed.) c. 43, §§ 56–63; and it is provided by § 5 of said c. 43, and in substance by the corresponding statute then in force, that "Until superseded under this chapter, the organization of the executive and administrative departments, and the powers and duties of the officers and employees of any city adopting any of the

plans provided for in this chapter, and the fiscal year of such city shall remain as constituted at the time of the adoption of such plan; but the city council or other legislative body may at any time by ordinance, consistent with general laws, reorganize, consolidate or abolish departments, in whole or in part; transfer the duties, powers and appropriations of one department to another, in whole or in part; establish new departments; and increase, reduce, establish or abolish salaries of heads of departments or members of boards. This section shall not authorize any action in conflict with chapter thirty-one." Under Plan B the mayor is described as the chief executive officer of the city and has the power of appointing the heads of the departments and certain other principal officials (§ 60), and has the specific power to remove the same (§ 61). The plan is silent as to any specific power which he may have to remove subordinate officers who are under the charge of the heads of various departments. The respondent notes that charter Plan B, under our present laws, while vesting the executive power in the mayor, does not vest in him specifically any power to appoint all police officers either with the approval of the legislative body or otherwise, and contends that this fact distinguishes any rule of law which may be applicable in the instant matter from the rule which is laid down in *Murphy* v. *Webster*, 131 Mass. 482. The respondent directs attention to the fact that in the statute considered in that case, concerning the city of Lawrence, the power of appointment and removal was explicitly stated to be in the possession of the mayor, subject to approval, and that in charter Plan B no such specific power of appointment and removal of subordinate police officers is stated to be vested in the mayor. The respondent, pursuing the chronology of the applicable enactments, further directs attention to the fact that the city of Cambridge continued with a police department in and under a commissioner of public safety, who had the power of appointment, and therefore the power of removal, of subordinate police officers until 1917, when, acting under the authority of what is now G. L. (Ter. Ed.)

c. 43, § 5, by an ordinance* it abolished the department of public safety and in its place established a fire department and a police department. Each of these departments was placed under the charge of a chief who was to be its head and who was to be appointed and removed by the mayor. The respondent further directs attention to the fact that no specific mention was made in such ordinance of the power to appoint or the power to remove subordinate police officers which was possessed by the former commissioner of public safety, but that heads of the two departments were given authority to determine the number, consistent with prescribed limits, of members of their respective departments, and to organize and administer their departments with the approval of the mayor. The respondent, referring to the provision contained in § 6 of the 1917 ordinance, that the "heads of said departments may expend for the conduct of their respective departments such sums as the City Council may appropriate," concludes therefrom that the chiefs have the power to establish salaries for individual officers unless the city council acts specifically with relation to them. The petitioner contends, in view of the provisions of G. L. (Ter. Ed.) c. 43, § 5, that the adoption of the ordinance, abolishing the special act calling for the appointment of a commissioner of public safety, revived the power of appointing police officers in the mayor as in accordance with the provisions of G. L. (Ter. Ed.) c. 39, § 1, and G. L. (Ter. Ed.) c. 41, § 96.

By way of answer to the petitioner's argument, the respondent replies that it would seem by implication from the power given to the two chiefs to organize and administer

---

* The ordinance here referred to was adopted by the city council of Cambridge on May 22, and approved by the mayor on June 4, 1917. It is not referred to in the pleadings in this case nor printed in the record. Both counsel quoted it in full in their respective briefs before the full court, however, and relied on it in their arguments. The effect of this ordinance as constituting the chief of police the officer in command of the police department seems to have been directly raised by the second request for ruling in *McLaughlin* v. *Mayor of Cambridge*, 253 Mass. 193, at page 194, and to have been determined by the court by its stating in the opinion at page 197, "The effect of the adoption of the ordinance was to . . . create . . . police and fire departments with a chief of police as the head of the former." — REPORTER.

their respective departments, and by reason of the failure to make any grant of power to the mayor to appoint subordinate police officials, that the chiefs of the police and fire departments have the power which previously was vested in their predecessor, the commissioner of the department of public safety, to appoint and therefore to remove the individual members of their respective departments. Reference is made in this connection to *Gordon* v. *Chief of Police of Cambridge,* 244 Mass. 491, 493, *McLaughlin* v. *Mayor of Cambridge,* 253 Mass. 193, and *Skold* v. *Chief of Fire Department of Cambridge,* 266 Mass. 513.

The petitioner in his brief does not discuss by number his requests for rulings in the proceeding in the District Court, which were refused as inappropriate to the findings and rulings made by the judge therein. We think there was no error in refusing the requested rulings and that the petition for certiorari was dismissed rightly as matter of law.

*Petition dismissed.*