TURE *v*. ECORSE CITY COUNCIL.

1. MUNICIPAL CORPORATIONS—CITY COUNCIL—POLICE AND FIRE COMMISSION.

> Charter provisions conferred authority upon the city council to fix the number of policemen to be employed and to require a reduction in personnel but left the matter of temporary suspension or discharge of particular individuals to the police and fire commission, where there were express provisions vesting the commission with power to hire personnel and detailed provisions relative to the procedure to be followed by the commission in the matter of suspension or discharge of members of the police force, including probationers (Ecorse Charter, ch 6, §§ 19–23).

2. SAME—POLICEMEN—DISCHARGE—CITY COUNCIL—POLICE AND FIRE COMMISSION.

> The power to discharge members of city police department, not having been expressly vested in the city council, will not be implied in view of provisions specifically vesting such power in the police and fire commission (Ecorse Charter, ch 6, §§ 19–23).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 47 Am Jur, Sheriffs, Police, and Constables § 19.
[3] As to damages for wrongful removal of a police officer, see 47 Am Jur, Sheriffs, Police, and Constables § 22.

3. SAME—PROBATIONARY POLICEMAN—DISCHARGE—COMPENSATION—
CITY COUNCIL—POLICE AND FIRE COMMISSION.

> Plaintiff, a probationary police officer, was entitled to compel
> city to pay him for work performed by him pursuant to action
> of the police and fire commission subsequent to city council's
> attempted discharge, where city charter did not vest authority
> to select members of the police force for suspension or dis-
> charge but expressly vested such power in the commission
> (Ecorse Charter, ch 6, §§ 19–23).

Appeal from Wayne; Murphy (George B.), J. Submitted July 11, 1951. (Calendar No. 45,132.) Decided October 1, 1951.

Mandamus by George Ture against Council of the City of Ecorse and its members to compel the approval for payment of plaintiff's salary as probationary patrolman. Writ granted. Defendants appeal in nature of certiorari. Affirmed.

*Samuel Brezner,* for plaintiff.

*Earl E. Montie,* for defendants.

CARR, J. The material facts in this case have been stipulated by counsel for the respective parties. The charter of the city of Ecorse makes provision for a council consisting of the mayor and 6 councilmen. It also creates a department of public safety, and vests in the police and fire commission of the city the general control and management of the police and fire departments. Shortly after July 1, 1950, plaintiff was appointed by the commission as a probationary police officer, there being a vacancy in such position. The fiscal year of the city begins on July 1st, and the amount appropriated by the budget for the year beginning July 1, 1950, and ending June 30, 1951, was sufficient to include payment of plaintiff's salary.

Plaintiff remained on the payroll following his appointment and drew his compensation until the 24th of October, 1950. On that date the council undertook by resolution to discharge plaintiff, who was the last probationary officer appointed in the police department, for reasons of economy. The resolution further directed the department of public safety to refrain from filling vacancies in the police and fire departments "which hereafter occur" until the further order of the council. The police and fire commission of the city questioned the legal right of the council to take the action indicated by the resolution, and on October 27th following, directed the chief of police to continue plaintiff's employment as a probationary patrolman. In accordance with the action of the commission, plaintiff reported for work regularly and performed duties assigned to him.

The council having refused to approve the payment of plaintiff's compensation after the adoption of its resolution, plaintiff instituted a mandamus action in the circuit court of Wayne county to compel it to do so. The petition filed alleged in substance that the discipline, suspension and discharge, of members of the police department were matters solely within the jurisdiction of the police and fire commission, and that, in consequence, the council was without authority to discharge the plaintiff. The answer filed by defendants admitted the power of the commission to discipline and suspend members of the police and fire departments of the city, but asserted that the council had the power under the law to discharge members of either department for reasons of economy. It was conceded that no charges had been filed against plaintiff and that he had continued to perform his duties as directed by the commission.

After listening to the proofs and arguments of the parties, the trial court came to the conclusion that

under the pertinent provisions of the city charter
plaintiff was entitled to the relief sought, and entered
an order accordingly. On leave granted, defendants
have taken an appeal in the nature of certiorari,
claiming that the order was based on an erroneous
interpretation of the charter.

The provisions in question, so far as material, are
set forth in an exhibit referred to in, and made a
part of, the stipulation of facts. They read as fol-
lows:

### "Department of Public Safety

"Police and Fire Commission—How appointed:

"Section 19—Chapter 6. There is hereby created
in the department of public safety a police and fire
commission which shall consist of 5 members.  * * *

"Meetings:

"Section 20—Chapter 6. The police and fire com-
mission shall have general control and management
of the police department and fire department. Said
commission shall at its first regular meeting after
the adoption of this charter and at its first regular
meeting after the 3d Tuesday in November each year,
elect a chairman, a vice-chairman and a secretary
from among its number. It shall meet regularly each
month and at such other times as it deems necessary.
All regular meetings shall be held in the municipal
building. It shall adopt rules for its own procedure
and provide for the keeping of a complete record
thereof.

"Department personnel:

"Section 21—Chapter 6. The police and fire com-
mission shall when a vacancy exists appoint a chief
of police and a chief of fire department, both of whom
shall be directly responsible to the commission, and
the executive head of the police department shall be
the chief of police and the executive head of the fire
department shall be the chief of the fire department.
In addition to the respective chiefs, there shall be
in the police department and in the fire department,
such number of policemen and firemen, respectively,

as the council shall from time to time authorize, or deem necessary to protect said city from lawlessness or ravages of fire. The council may also authorize the employment of civilian employees, who, however, shall not be considered as members of the police force or fire force, as those terms are used in this charter. All persons appointed to either the police force or fire force, except those appointed to office of chief, shall be first appointed as probationary members thereof. All members of the police and fire forces shall be residents of the city of Ecorse.

"Appointment:

"Section 22—Chapter 6. The commission shall from time to time receive applications for the positions of policemen and firemen; it shall cause such applicants to be examined physically and mentally by the city physician or such other physician as the council may designate; it shall determine the fitness of such applicant for the position applied for and shall create and maintain a waiting list of satisfactory applicants for appointment as policemen and firemen respectively. All appointments to positions as policemen and firemen shall be made by the commission.

"Section 23—Chapter 6. The commission shall adopt rules and regulations for the organization and conduct of the police and fire departments, for the rank of the members of the police and fire forces, and for punishment for breaches of discipline or violations of rules and regulations. The commission may discipline, suspend temporarily and discharge permanently any member of the police or fire department for any cause which the commission in the exercise of their discretion deem sufficient, provided, however, that neither the chief of the police department nor the chief of the fire department, nor any member of the police or fire forces except a probationary member shall be dismissed unless a formal complaint of the cause or causes of his suspension or removal be served upon him, and after trial and conviction by the commission sitting as a trial board.

The decision of the commission shall be final. Such rules shall provide for the manner of making such complaint and for the procedure upon such a trial."

The provisions quoted clearly indicate an intent to vest the general control and management of the police department in the commission. All appointments to positions therein are required to be made by it. It receives applications, gives examinations, determines the fitness of applicants, and maintains a list from which appointments may be made. It is further given express power to adopt rules and regulations for the department and to suspend or discharge any member for cause that the commission deems sufficient. Except in the case of probationary members a formal complaint is required, on the hearing of which the commission sits as a trial board. The express reference to probationary members in section 23 indicates clearly that they, like other patrolmen, are subject to removal by the commission.

Our attention is not directed to any provision of the charter vesting in the council authority to discharge members of the police department. Under chapter 6, § 21, it is authorized to fix the number of policemen and firemen deemed necessary for the protection of the city, and may also authorize the hiring of civilian employees. Construed together, the sections, above quoted, lead to the conclusion that in the framing and adoption of the charter it was intended to clearly define the powers and duties of the council and of the commission with reference to the police department. The council, through its control of appropriations and the exercise of the expressly granted power to fix the number of policemen to be employed, may require a reduction in the personnel, but the language of the charter clearly indicates that the selection of the particular individ-

uals to be discharged, or temporarily suspended, rests with the commission.

Counsel for defendants call attention to *Smith* v. *Flint City Commission,* 258 Mich 698; *Slavin* v. *City of Detroit,* 262 Mich 173; and *Fricke* v. *City of Grand Rapids,* 278 Mich 323. These and other decisions of like import recognize the right of the duly authorized officers of a municipality, acting in good faith, to abolish municipal positions as a measure of necessary or expedient economy. It may be noted in this connection that the good faith of the defendants in the adoption of the resolution of October 24, 1950, is not challenged. The issue presented goes simply to the question of the power of the council under the charter to discharge plaintiff. It is conceded that the council has authority to abolish police department positions and to reduce appropriations, thereby compelling the commission to dismiss personnel. It is the position of plaintiff, however, that the selection of the personnel to be dismissed is a matter wholly within the province of the commission. None of the cases above cited supports the theory of the defendants on the legal issue.

In *Smith* v. *Flint City Commission, supra,* the chief of police and acting city manager undertook to remove plaintiff, who was a war veteran, as an employee of the municipal police department. The charges filed recited the necessity of taking such action because of the economic condition of the city. The action was sustained by the mayor and city commission acting as a review board. This Court held, there being no evidence of bad faith, that plaintiff's status as a veteran did not prevent his being discharged as a result of a duly authorized decrease in personnel made for economic reasons. In *Slavin* v. *City of Detroit, supra,* charter provisions vested the right of appointment and removal of policemen

and firemen in the police commissioner and the board of fire commissioners respectively. The fact that the council through its control of appropriations might have indirectly limited the number of officers and employees in each department did not detract from the measure of authority granted by the charter to the departmental heads. Of like effect is *Fricke* v. *City of Grand Rapids, supra.*

In 62 CJS, pp 1119, 1120, it is said:

"The power to remove policemen is usually provided for by constitutional, statutory or charter provisions, and only such persons or agencies may exercise a power of removal as are authorized by such provisions. The power conferred by the legislature cannot be taken away or abridged by ordinance.

"Authority to remove a policeman may be implied, as where authority is implied from the power of appointment where the tenure of the office is not otherwise defined and no other provision limits or restrains the implied power."

See, also, *Clark* v. *Detroit Police Commissioner,* 299 Mich 78.

As before pointed out, the council has no express power to discharge members of the police department. In the face of the specific provisions of the charter such power may not be implied. The procedure contemplated by the charter must be observed. *Schurtz* v. *City of Grand Rapids,* 199 Mich 20; *Carroll* v. *City Commission of City of Grand Rapids,* 265 Mich 51. See, also, *Speed* v. *Common Council of the City of Detroit,* 98 Mich 360 (22 LRA 842, 39 Am St Rep 555).

In *Childress* v. *Peterson,* 18 Cal2d 636 (117 P2d 336), the plaintiffs brought mandamus proceedings to compel their reinstatement as policewomen of the city of San Diego. It was held that the city had the power to reduce the number of employees in the police department if necessary because of lack of

funds or other economic factors. In exercising such power, however, it was the duty of the city officials concerned to observe the procedural requirements of the charter. Commenting on the situation in this regard, it was said in part:

"While the executive officers of a city, acting under enabling legislation, have plenary power to exercise full administrative judgment and control over city employees and to promote a program of economy in good faith, they are required in the enforcement of their judgment to act in conformity with charter provisions and procedural requirements. * * *

"In the present case this was not done. The positions held by plaintiffs were not abolished by the city council, although this would have been one means of reducing the force of policewomen. The fiscal year of the city of San Diego runs from July 1st to June 30th of the succeeding year. In May or June the city council passes a classification ordinance creating and establishing positions in the city service and repealing the ordinance enacted the previous year. The classification ordinance passed in 1939 (Ord. 1611 N. S., enacted June 13, 1939), repeated the provision made by several prior classification ordinances (Ord. 1160 N. S., passed May 25, 1937; Ord. 1387 N. S., passed May 24, 1938), for the creation and establishment of positions for 8 policewomen. This ordinance, like the ones preceding it, created many positions which were never filled, the excess being designed to safeguard against emergencies which might arise during the fiscal year requiring additional help in different departments. In the police department no more than 6 policewomen were ever employed, and just prior to June 1, 1939, there were only 5 in the service. Thus at all times a sufficient number of positions to cover plaintiffs' employment were established by ordinance and remained unabolished."

A somewhat analogous question was involved in *Simpson* v. *Handberry,* 159 Fla 805 (33 S2d 31).

There the chief of police discharged a member of the department for alleged reasons of misconduct. An appeal was taken to the personnel board created by the city charter, which determined, after a hearing, that the charges were sustained by the proofs. The board, however, undertook to set aside the order of discharge. It was held that such action was beyond the charter power of the board, that the power of appointment of a successor was vested in the chief of police, and that, the charges having been sustained, under a proper interpretation of the charter provisions he alone had authority to act. See, also, *Duggan* v. *Third District Court of Eastern Middlesex,* 298 Mass 274 (10 NE2d 61); 4 McQuillin, Municipal Corporations (3d ed), § 13.02, p 433.

In view of the express provisions of the charter involved in the instant case, it must be said that the council of the city of Ecorse did not have power to discharge the plaintiff. The order of the trial court is affirmed, with costs of this appeal to plaintiff.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.