ELMORE v DETROIT POLICE COMMISSIONER (ON REMAND)

Docket No. 77-560. Submitted June 19, 1978, at Detroit.—Decided September 6, 1979. Leave to appeal denied, 407 Mich 933.

Plaintiff, Arthur Elmore, joined the Detroit Police Department as a probationary police officer in December 1971. Shortly thereafter he was diagnosed as having chronic lymphocytic luekemia. In February 1972 Elmore was discharged from the police department for medical reasons. Elmore brought, in Wayne Circuit Court, an action for damages for wrongful discharge, alleging that he was asymptomatic and capable of work. Following a jury trial, a judgment of $30,152.53 was entered in favor of plaintiff, Theodore R. Bohn, J. Defendant, Police Commissioner of the City of Detroit, appealed. The Court of Appeals affirmed in an unpublished memorandum opinion on August 11, 1978. Defendant appealed to the Supreme Court, which on March 5, 1979, remanded to the Court of Appeals "for amplification of its opinion and decision by addressing the question: whether the defendant-appellant had to have 'cause' to terminate plaintiff-appellee or whether defendant-appellant could terminate plaintiff-appellee for any reason during the probationary period". 406 Mich 872 (1979). *Held:*

The provisions of the 1918 Detroit city charter relative to the organization of the police department imply that "cause" had to be established before a probationary police officer could be discharged by the police commissioner.

Affirmed.

MUNICIPAL CORPORATIONS — PROBATIONARY POLICE OFFICERS — DISCHARGE — CAUSE — DETROIT CITY CHARTER.

The provisions of the 1918 Detroit city charter relative to the organization of the police department imply that "cause" had to be established before a probationary police officer could be discharged by the police commissioner.

*Dee Edwards,* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTE

56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 314.

*Roger E. Craig,* Corporation Counsel, and *William Dietrich* and *Gregory E. Snow,* Assistants Corporation Counsel, for defendant.

Before: D. C. RILEY, P.J., and M. F. CAVANAGH and B. M. HENSICK,* JJ.

## ON REMAND

PER CURIAM. Following this Court's affirmance of the jury verdict below, this cause was remanded to us by our Supreme Court for amplification.[1]

Detroit, as a home-rule city, MCL 117.4j; MSA 5.2083, provided for the establishment of a commissioner of the police who was entrusted with the supervision of the police department. Detroit Charter, Title IV, Chapter 21, § 5.[2] Applicants for employment as patrolmen are subject to the general qualifications imposed in § 8 and must pass the required examination as provided in § 14(h). Title IV, Chapter 21.

An eligibility list of qualified applicants who pass the examination is prepared by the commissioner from which he appoints candidates for patrolmen. That appointment is for a probationary period of six months. The pertinent section further provides: "At or before the expiration of the probationary period the police commissioner may dis-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "* * * the matter is REMANDED to the Court of Appeals for amplification of its opinion and decision by addressing the following question: whether the defendant-appellant had to have 'cause' to terminate the employment of plaintiff-appellee or whether defendant-appellant could terminate plaintiff-appellee for any reason during the probationary period. The amplified opinion is then to be filed with this Court." 406 Mich 872 (1979).

[2] Plaintiff was dismissed on February 7, 1972, therefore, the provisions of the 1918 Detroit City charter apply to his trial, rather than those of the new Detroit charter, effective July 1, 1974.

charge such probationary patrolman or patrolwoman. Upon passing the requirements of the probationary period such probationary patrolman or patrolwoman shall be confirmed as a regular police officer and the appointments shall be deemed permanent". Title IV, Chapter 21, § 14(1). A subsequent section provides: "No member of the police force shall be removed from the force except upon written charges preferred against him to the commissioner and after opportunity of being heard in his defense, but the commissioner may suspend any member of the force pending the hearing of the charges against him." Title IV, Chapter 21, § 16.

The only other relevant provision in this inquiry is the Detroit ordinance which specifies the minimum employment standards for law enforcement officers. In pertinent part it directs that the applicant-trainee "shall be free from any physical defects, chronic diseases, organic diseases, organic or functional conditions, or mental instabilities which may tend to impair efficient performance of duty which might endanger the lives of others or himself if he lacks these qualifications". Detroit City Code, § 46-4-1(H). At trial the police commissioner was unable to demonstrate that plaintiff's disease would impair his efficient performance of duty as a patrolman.

Throughout the entire chapter of the Detroit charter concerning police there is only one specific reference to removal of an employee with or without cause. That occurs with reference to privately employed patrolmen who "shall hold office at the pleasure of the commissioner * * * and may be removed at any time by the commissioner without cause assigned therefor." Title IV, Chapter 21, § 10. This stands in contrast with the less explicit

provision that "the police commissioner may discharge such probationary patrolman or patrolwoman." Title IV, Chapter 21, § 14(l).

Plaintiff in this case was sworn in as a Detroit Police Officer on December 27, 1971. By the provisions of the Charter he was a police officer, Title IV, Chapter 21, § 14(c). He was, therefore, entitled to the "opportunity of being heard in his defense" before being separated from the police force. Title IV, Chapter 21, § 16. We conclude that the applicable charter provisions imply that "cause" must be established. These charter provisions must control our resolution. See *Ture v Ecorse City Council,* 331 Mich 380; 49 NW2d 339 (1951).

Accordingly, we did and do affirm. Costs to appellee.

B. M. HENSICK, J., not participating.