PEOPLE, *ex rel.* ELLIS, *v.* CALDER.[1]

1. CONSTITUTIONAL LAW — VALIDITY OF STATUTES — MOTIVES OF LEGISLATURE—JUDICIAL INQUIRY.

That the members of the legislature voted for a bill repealing a special charter, previously granted to a private corporation, without investigating the merits, and in compliance with a custom relating to local measures, and in reliance upon the representations of the members from the locality affected to the effect that the delegation from that county were a unit in favor of the bill, and that it did not involve a subject upon which the people of the State were interested, is not admissible to impugn the constitutionality of the repealing act, the motives of the legislature in passing a law not being open to inquiry.

2. SAME—GOOD FAITH OF LEGISLATURE—PRESUMPTION.

The courts conclusively presume that the legislature acts in good faith.

3. CORPORATIONS — SPECIAL CHARTERS — REPEAL — NOTICE AND HEARING—SUFFICIENCY—CONSTITUTIONAL LAW.

An objection to a law repealing the charter of a corporation that notice was not given as required by section 16, article 15, of the Constitution, is untenable, where it appears that notice was given to the legislature of the member's intention to introduce the bill, as required by sections 8569–8571, 3 Comp. Laws, and that, though the officers of the corporation were not formally notified, they had knowledge of the pending bill and were given a hearing by the governor and denied a hearing by each house of the legislature.

4. SAME—REPEAL OF CHARTER—CONSTITUTIONAL LAW.

Section 16, article 15, of the Constitution, providing for notice of an application for an alteration of the charter of any corporation, has no application to the repeal of a charter.

5. CONSTITUTIONAL LAW—SPECIAL CHARTER — REPEAL —VALIDITY —OBLIGATION OF CONTRACTS — DUE PROCESS OF LAW — TAKING PRIVATE PROPERTY.

The repeal, by the legislature, of the special charter of a water

[1] Returned to Supreme Court of the United States on writ of error August 18, 1908.

company, acting under a reserved power in the charter, cannot be said to violate the obligation of any contract between the water company and the State, nor to deprive it of its property without due process of law, nor to take its property for public use contrary to section 2, article 18, of the Constitution.

6. SAME—RIGHTS OF BONDHOLDERS.
    The constitutional rights of the holders of the bonds of a private corporation are not impaired by the repeal of the corporation's charter, in accordance with a reserved power in the charter, since the franchises mortgaged to secure the bondholders are no other or different than those granted to the corporation.

7. ESTOPPEL—MUNICIPAL OFFICERS—ENFORCEMENT OF STATUTE.
    An objection to the enforcement of a statute repealing the charter of a water company, on the ground that it was passed in consequence of the wrongful conduct of certain officers of the city affected, is untenable in a case in which the repealing act is sought to be enforced, not for the benefit of the officers whose conduct was wrongful, but for the benefit of the entire inhabitants of a city who were guilty of no wrong.

8. EMINENT DOMAIN — NECESSITY OF TAKING — DETERMINATION — COMPENSATION—SUFFICIENCY.
    Where a statute repealing the charter of a water company gave the company the right to present a claim for the value of its tangible property to the common council of the city wherein it was situated, an objection that the provision is unconstitutional because (a) it permits property to be taken for the public without the determination of necessity as provided in the Constitution; and (b) that the compensation provided is unlawful and inadequate; is untenable, where the provision is merely permissive, and if the corporation accepts, it voluntarily sells its property on the terms stated in the provision.

Error to Kent; Perkins, J. Submitted January 13, 1908. (Docket No. 46.) Decided July 13, 1908.

Quo warranto proceedings by the people of the State of Michigan, on the relation of George E. Ellis and others, against John F. Calder and others to test the right of re-

spondents to act as a corporation. There was judgment of ouster, and respondents bring error. Affirmed.

*Kingsley & Wicks* (*John E. More*, of counsel), for appellants.

*John E. Bird*, Attorney General (*Moses Taggart* and *Ganson Taggart*, of counsel), for appellee.

This is a quo warranto proceeding instituted in the Kent circuit court to test the right of respondents to act as a corporation under the name and style of the Grand Rapids Hydraulic Company. The Grand Rapids Hydraulic Company was incorporated under Act No. 223 of the Laws of 1849, for the purpose of supplying water for the use of the inhabitants of Grand Rapids. The act contained no limitation upon the life of the corporation save this: It was provided that "the legislature may at any time hereafter amend or repeal this act." In 1905 the legislature exercised this authority, and by Acts No. 455 and No. 492 of the Local Acts of that year repealed said Act No. 223 of the Laws of 1849. At the same time it gave to said company the right to present a claim for the value of its tangible property to the common council of the city of Grand Rapids.

The question in this case is whether said repealing acts are constitutional. Relators contend that they are. Respondents deny this. The circuit court held that they were constitutional and entered a judgment of ouster against respondents. Respondents bring the case to this court for review. They contend that the repealing acts are unconstitutional for various reason, which will be considered under the following heads:

(1) Motives of the legislators.
(2) Notice and hearing.
(3) General constitutional objections.
(4) Estoppel.
(5) Provision for presentation of claim.

CARPENTER, J. (*after stating the facts*). 1. Motives of the legislators. The respondents admit that more than two-thirds of the members-elect to each house voted for the repealing laws in question. They complain because they were denied the right to prove that they so voted without investigating the merits, and " without in fact exercising their judgment and discretion on the merits," in compliance with a custom relating to local measures and in reliance upon the representations of the members of Kent county to the effect "that the delegation from Kent county was a unit in favor of said bill and that it did not involve a subject in which the people of the State of Michigan were interested." We think the ruling complained of was correct. In *People* v. *Gardner*, 143 Mich., at page 109, we quoted with approbation from Cooley's Constitutional Limitations (7th Ed.), p. 257, as follows:

"And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon. The reasons are the same here as those which preclude an inquiry into the motives of the governor in the exercise of a discretion vested in him exclusively. He is responsible for his acts in such a case, not to the courts, but to the people."

In this connection we notice the contention of respondents that in repealing that law the legislature must act in good faith. It is sufficient to say that the courts must conclusively presume that the legislature did act in good faith. Under the rule above stated the courts have no authority to investigate that question. The only cases to which our attention is called, which oppose this principle, relate to certain proceedings of municipal bodies. The principle of those cases is limited. It does not extend even to legislative action of municipal bodies. It certainly does not apply to this case. This was decided in *People* v. *Gardner*, supra.

2. Notice and hearing. Respondents contend that they were not given the notice and hearing to which they were entitled by section 16, art. 15, of our Constitution. That section reads:

"Previous notice of any application for an alteration of the charter of any corporation shall be given in such manner as may be prescribed by law."

The repealing law was enacted twice by the legislature in 1905. One of these laws is Act No. 455, Local Acts 1905; the other is Act No. 492, Local Acts 1905. Act No. 455 received the approval of the governor April 5, 1905. Act No. 492 received the approval of the governor April 25, 1905. It appears from respondents' plea that they had no formal notice of this pending legislation. They did, however, learn of it, and were afforded a hearing by the governor, but were denied a hearing by each house of the legislature. It also appears by their plea that the bills were introduced by legislators from Kent county, who had been requested to take this action by the municipal authorities of the city of Grand Rapids. It also appears that the legislator who introduced the bill had given more than one day's notice of his intention so to do. Each of the acts was passed in due form. Act No. 492 received a vote of more than two-thirds of the members-elect to each house. Under these circumstances were respondents denied any rights given them by section 16 of article 15? At the first session of the legislature, after the Constitution of 1850 took effect, it passed a law providing for the giving of notice in cases coming under said section 16. That law is found in sections 8569, 8570, and 8571, 3 Comp. Laws. Of this law it was said by Justice CHRISTIANCY, in *People* v. *Hurlbut*, 24 Mich., at page 54:

"The effect of this act, and of the constitutional provision under which it was framed, would be to justify the legislature in disregarding, and probably—while the act remains in force—to impose upon them the duty to dis-

regard the *application* as such, until the proper notice should have been given as provided by the act. It does not, however, operate to restrict the right of the legislature itself to make such amendment as they may think the public interest may require; nor does it restrict the right of any member of either house of introducing a bill for that purpose on giving one day's previous notice of his intention so to do. Nor do we think, as insisted by the counsel for the respondents, that the notice, when given in either house by a member, is by this act required as in case of an *'application'* in behalf of the corporation or individuals, 'to set forth briefly the nature of the alteration *applied* for.' This provision applies only to cases where alterations are *'applied for'* from *without* the legislature itself, and is coextensive *only* with the provision requiring the publication of the notice of such application. The provision allowing a member of either house to give one day's notice of the intention to introduce a bill for such purpose was, we think, intended to recognize the almost universal custom or practice in legislative bodies in this country to require one or more days' notice from a member of his intention to introduce, or ask leave to introduce, a bill; in which case nothing more than the title or general object of the bill is usually required.

"It is urged that if this be the true construction of the Constitution and the act, both may be readily evaded; as it would always be practicable for the corporation to procure some member of the house or senate to give the one day's notice, and to introduce the bill on his own responsibility as a member. This may or may not be true; but if true, it is a difficulty inherent in the nature of the subject itself, and for which the courts cannot provide a remedy. A proper respect for a co-ordinate branch of the government requires us to presume that each member of the legislature acts upon his individual conviction of public duty, and that he will not become the willing instrument of designing parties, to enable them to evade the statute or the Constitution."

This reasoning, which we thoroughly approve, answers every argument advanced by respondents in support of their claim that they were entitled to notice under section 16 of article 15 above quoted. Perhaps it might also be stated that section 16 of article 15 has no application to a repeal of a charter. There is a distinction between an

alteration and a repeal. See *Yeaton* v. *Bank of the Old Dominion*, 21 Grat. (Va.) 593.

3. General constitutional objections. In the circuit court respondents urged that the repealing act impaired the obligations of the contract between the hydraulic company and the State, contrary to the provisions of the Constitution of the United States; that it deprived the company of its property without due process of law, contrary to the provisions of the Constitution of the State of Michigan and of the 14th Amendment of the Constitution of the United States; that it took its private property for public use in contravention of section 2 of article 18 of the Constitution of Michigan. In our judgment none of these objections are tenable. The repealing act does not take from the corporation any personal or real property acquired during its legal existence. It does take from it this, and only this: Its right to continue to be a corporation. It takes from it no right, franchise, or power which does not depend for its existence upon the granting clause of the charter, and these it had a legal right to take. *Greenwood* v. *Freight Co.*, 105 U. S. 21. These rights it obtained from the legislature of the State of Michigan. By its terms the law granting these rights might at any time be repealed by the legislature. The corporation would exist until, and only until, the legislature repealed the law creating it. The life of the corporation expired, according to the terms of its charter, with the repeal of the law. Any argument that the repeal destroyed any constitutional right must rest upon the impossible assumption that the corporation had a legal right to exist for a term longer than that specified in its charter. It had no such right. If authority in support of this reasoning be needed, we think it is found in *Greenwood* v. *Freight Co.*, supra.

In this connection, we consider the claim of respondents that the constitutional rights of certain holders of bonds of the corporation are impaired by the repealing acts.

These holders of bonds are creditors of the corporation who are secured by mortgages upon the corporate property and franchises. We deem it sufficient to say that the franchise mortgaged to secure these bonds was no other than that granted to the corporation. Nor did the mortgage in any way change its effect or lessen the right of the legislature to repeal it at any time. The bondholders acquired no greater rights than the corporation had. The existence of the bonds secured by the mortgage is therefore an entirely immaterial circumstance and in no way affects the correctness of the foregoing reasoning.

4. Estoppel. Respondents contend that the repealing acts cannot be enforced because they were passed in consequence of the wrongful conduct of certain officials of the city of Grand Rapids. Whether the principle of estoppel can ever be invoked to prevent the enforcement of a valid legislative enactment, we do not decide. We do decide that it cannot be invoked in this case. Here the repealing acts are sought to be enforced, not for the benefit of those whose conduct was wrongful, but for the benefit of the entire inhabitants of a great city who were guilty of no wrong. Their right to have the law enforced cannot be affected by the circumstance that some agent of the municipality acted improperly in procuring its enactment.

5. Provision for presentation of claim. The repealing acts give the corporation the right to present a claim for its tangible property to the common council of the city of Grand Rapids. It is contended that this provision is unconstitutional because (*a*) it permits property to be taken for the public without the determination of necessity as provided in the Constitution; and (*b*) that the compensation provided therein is unlawful and inadequate. It is a sufficient answer to each of these claims to say that this provision is not compulsory. It has no force unless the corporation chooses to accept it. If the corporation does accept, it voluntarily sells its property on the terms stated

in said provision. To this there is no constitutional objection.

It results from this reasoning that the judgment of the circuit court must be affirmed.

Grant, C. J., and Blair, Moore, and McAlvay, JJ., concurred.