## FRICKE *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—ABOLITION OF POSITION.
   A city can dismiss a civil service employee by abolishing the position which the employee holds.

2. SAME—ABOLITION OF POSITION—ECONOMY.
   A civil service position may be abolished for *bona fide* reasons of economy.

3. SAME—CIVIL SERVICE—GRAND RAPIDS—ABOLITION OF POSITION.
   Under civil service provisions of Grand Rapids charter and rules effective thereunder, abolition of office or position for *bona fide* reasons of economy does not entitle holder to a hearing before the civil service board.

4. SAME—CITY MANAGER—POLICE DEPARTMENT.

Under Grand Rapids charter the city manager is the person to decide how many patrolmen there should be at any given time in the police department.

5. SAME—POLICEMEN—SUSPENSION—GOOD FAITH.

In mandamus proceeding by plaintiffs for reinstatement as policemen because of alleged illegal suspension under civil service provisions of charter, finding of trial court of an absence of bad faith on part of city officials in reducing police force *held*, correct, where no officers were appointed or hired to take their place and notwithstanding salaries of remaining members were thereafter somewhat increased.

6. EVIDENCE—JUDICIAL NOTICE—INCREASE OF LIVING EXPENSES.

It is common knowledge that since May, 1935, living expenses have increased.

7. MUNICIPAL CORPORATIONS—SURPLUS IN TREASURY—GOVERNMENTAL ECONOMY.

Fact that city had a surplus in its treasury *held*, no reason for not reducing personnel of police and other departments of city government pursuant to general policy of economy in operations of city government.

8. SAME—LEGISLATURE—COURTS—LOCAL SELF-GOVERNMENT.

Neither legislature nor court, by mandamus, may control action of duly constituted authorities in the administration of local self-government, in seeking to balance their budget in good faith by reducing police force, abolishing offices, consolidating departments and cutting expenses.

9. SAME—CIVIL SERVICE—SENIORITY RULE.

City charter of Grand Rapids *held*, not to require observance of seniority rule, so-called, in abolishing positions of patrolmen, subject to civil service, when police force is reduced.

10. SAME—VETERANS' PREFERENCE ACT—RIGHT TO ABOLISH POSITION.

Veterans' preference act does not circumscribe right of proper municipal officers to abolish positions or employments for reasons of economy and thereby remove veterans in absence of bad faith or subterfuge intended to defeat statutory preference (1 Comp. Laws 1929, § 901, as amended by Act No. 67, Pub. Acts 1931).

11. SAME—VETERANS' PREFERENCE ACT—SUSPENSION OF POLICEMEN.
    Veterans' preference act relative to public employment *held*, in-
    applicable to 4 veterans in group of 23 members of police
    force suspended for reasons of economy (1 Comp. Laws 1929,
    § 901, as amended by Act No. 67, Pub. Acts 1931).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted September 29, 1936. (Calendar No. 38,974.) Decided December 28, 1936.

Karl A. Fricke, Freeman Lowden, Myrl Antcliff, Noble B. Anderson, William Tatroe, Kennith E. Burrison, Charles Wademan, Martin G. Starr, John Kolenbrander, Seba Beimers, William J. Larkin, Ralph M. Bigelow, John Sweeney, Boyd Gayman, Marcus Bartholomew, Clyde Morton, Edward A. Liscomb, Paul Vander Maas, Edwin Barry, John O. Pike, Owen Tillman, Peter Goobeck and Charles Edward Campbell filed petitions for writs of mandamus directing the City of Grand Rapids, a municipal corporation, and others to reinstate petitioners as patrolmen in the police department and that an order be entered requiring payment of salary. Cases consolidated for trial and appeal. Judgment denying writs of mandamus is reviewed by plaintiffs by appeal in nature of certiorari. Affirmed.

*Williams, Stiles & Tubbs,* for plaintiffs.

*Louis H. Grettenberger,* for defendants.

SHARPE, J. Plaintiffs filed petitions for writs of mandamus in the superior court of Grand Rapids asking that they be reinstated in active service as patrolmen in the police department of the city of Grand Rapids as of May 20, 1935, and that an order

be entered requiring the defendants to pay them their full salary from and after May 20, 1935.

The city of Grand Rapids operates under a char- ter which contains the following provision:

Title 7, § 1. "The civil service board of the city shall be composed of seven members, three of whom shall be members of the city commission to be appointed on the first Monday in May each year, by the mayor, one from each ward. The remaining four members shall be resident taxpayers of the city of Grand Rapids, distributed among the several wards of the city as nearly as is practicable. They shall be appointed by the city commission on the first Monday in May and shall hold office for four years. All members shall serve without compensation."

The following civil service rule and regulation was in force prior to May 15, 1935:

Rule 11. § 1. "Whenever any permanent position in the competitive class is abolished or made unnecessary, or whenever the number of positions of a certain character are reduced, the person or persons legally holding such positions shall be deemed to be suspended without pay, and the names of such persons shall, on due notification from the appointing officer, be placed by the board on a special list, under such classified title and corresponding to such competitive eligible list, as in the judgment of the board, most clearly cover the class of duties performed by such persons in the positions from which suspension is made, but no person who has received a permanent appointment shall be suspended from any position for lack of work or appropriation while probationers serving under the same title are employed in the same department, office or institution. For a period of one year from the date of suspension such persons shall be entitled to reinstatement in any position, or any grade of such positions, for

which certification from such corresponding eligible list might be made, and the chief examiner shall certify their names to the proper appointing officer as entitled to such reinstatement, in the order of the dates of their original appointment to the classified service, before certification is made from such corresponding eligible list for any such vacancy; provided that such persons shall be selected for certification, first, for a position the same as that from which suspension was made, if the vacancy exists in such a position, and, second, for corresponding or similar positions.''

On May 15, 1935, the civil service board adopted the following resolution:

''Whereas, because of the financial emergency now confronting the government of the city of Grand Rapids, which makes necessary a substantial, unprecedented and immediate reduction in the number of municipal employees, and

''Whereas, in the reduction of the number of employees, the utmost care and good judgment should be employed to the end that both the best interest of the city and the welfare of the employees shall be fully safeguarded and all parties in interest shall be treated with the utmost fairness possible under the circumstances;

''Now, therefore, be it resolved, That the selection of those employees, who, because of such emergency, must be suspended without pay, as provided by rule 11 of the civil service rules and regulations, shall be made by the majority action of the city manager, the head of the department involved, and a member of the civil service board, to be selected by said board:

''The foregoing resolution to stand as an amendment to said rule 11 for a period of one year from and after the date of its adoption.''

On May 18, 1935, 16 of these appellants were suspended as patrolmen from the police department of

Grand Rapids, each man being handed a letter which read as follows:

"By reason of the curtailment of the city's budget for the current financial year, which commenced the 1st of April, it is necessary to drastically reduce the city's expenditures, and in this connection the city commission has ordered that the police department be reduced to a total of not to exceed 200 men.

"For this reason it is necessary that I give you notice of suspension as of May 20, 1935. Owing to this short notice, I am recommending two weeks' pay be given you, dating from May 20th, which you will receive in the regular course. This will cover your two weeks' vacation.

"This action places you on the eligible list in accordance with the civil service regulation, and should the department be expanded, you would be eligible for reappointment without examination, during the period provided by rule.

"I regret the necessity of this action."

On June 4, 1935, rule 11 was amended as follows:

"In cases of reductions in the number of employees on account of insufficient funds or otherwise, necessary demotions and dismissals shall be made in order, beginning with employees having the lowest ratings in each class, but honorably discharged soldiers and sailors shall be given preference over those of equal rating in selecting employees for retention. Said classes shall be based upon the number of and nature of suspensions, number of years in the service of the city, violations of departmental rules and regulations, and the rating as to efficiency given by his superior officers."

On July 1, 1935, the board was presented with a report outlining the system employed in rating the patrolmen of the police department. The report contained a list of 29 men to be dismissed as of

July 2, 1935; and on the latter date seven more of the plaintiffs received notice of their suspension. On July 15, 1935, plaintiffs filed a petition for reinstatement, but the board refused to act upon the petitions, claiming they had no jurisdiction inasmuch as the dismissals were made for reasons of economy and no charge having been filed against any of plaintiffs.

Individual petitions for writs of mandamus were filed in the superior court of Grand Rapids seeking reinstatement and for salary during the time of the claimed unlawful suspension. The causes were consolidated, and the cause tried in October, 1935. In February, 1936, the trial judge filed an opinion denying plaintiffs the relief sought, holding that the procedure adopted by the board was unnecessary; that the city manager had made a good faith determination to reduce the personnel of the police department; and that the method employed of selecting the men for suspension was proper because the ground for removal was not personal to any plaintiff.

Plaintiffs appeal and contend that the testimony does not support the finding of the lower court that there was no bad faith on the part of the city officers responsible for the suspension of plaintiffs; that the method of selecting plaintiffs for dismissal was improper; and that the city officials were without authority in dismissing four of plaintiffs who are veterans and, as such, are entitled to the benefits of the veterans' preference act (1 Comp. Laws 1929, § 900 *et seq.* as amended by Acts Nos. 66, 67, Pub. Acts 1931).

Authorities universally sustain the proposition that a city can dismiss a civil service employee by abolishing the position which the employee holds. *Smith* v. *Flint City Commission,* 258 Mich. 698, and

cases cited therein; and that a city may abolish a position for *bona fide* reasons of economy, *Slavin* v. *City of Detroit*, 262 Mich. 173. It is conceded by plaintiffs that if an office or position in the city government is abolished for *bona fide* reasons of economy, the holder of that position is not entitled to a hearing before the civil service board under the civil service provisions of the city charter; and that the city manager is the person to decide how many patrolmen should be at any given time in the police department.

Considering these general principles of law in connection with the charter provisions above mentioned, we come to the conclusion that the principal issue involved in this cause is the matter of good faith on the part of the city officials in making the dismissals complained of. We think the trial court came to the correct conclusion in finding an absence of bad faith on the part of the city officials in reducing the police force. It is significant that after the dismissal of plaintiffs, no officers were appointed or hired to take their place.

In *State, ex rel. Voris,* v. *City of Seattle,* 74 Wash. 199, 204 (133 Pac. 11, 4 A. L. R. 198), it is stated:

"The council having the right to abolish the position occupied by relator, it would be an unwarranted usurpation for the courts to go beyond the question of good faith of that body. We find nothing in the record to overcome that presumption of regularity and integrity which attends every act of a co-ordinate branch of the government. If there was anything proven that would challenge the good faith of the council, the fact that five positions were abolished in the ordinance which abolished the relator's position is a sufficient answer, and enough to sustain our holding that the motive of the council

was pure and prompted by a disposition to work economy.''

One of the grounds upon which plaintiffs rely in showing bad faith is that in the preceding year the city had a surplus of approximately $388,000 and the salary of the patrolmen remaining in the force was increased $100 per year. The fact that salaries have been raised is not evidence of bad faith. It is common knowledge that since May, 1935, living expenses have increased. The fact that the city had a surplus in its treasury at the time of the dismissal of plaintiffs is no reason why the police force may not be reduced or the personnel of other departments reduced to conform to a general policy of economy in the operations of the city government.

As is stated in *Smith* v. *Flint City Commission, supra:*

''When the municipal officers of a city, vested by the Constitution and laws of the State with the right, power, and authority to administer local self-government, in good faith, reduce the police force of the city, abolish offices, consolidate departments, cut expenses, and seek to balance their budget, neither the legislature nor the court may control their action.''

See, also, *People* v. *Gardner,* 143 Mich. 104; *People, ex rel. Ellis,* v. *Calder,* 153 Mich. 724 (126 Am. St. Rep. 550); and *Calder* v. *State of Michigan,* 218 U. S. 591 (31 Sup. Ct. 122).

It is next claimed that it was necessary for the city to follow the so-called rule of seniority in abolishing positions, namely, that the city should abolish the positions of patrolmen last hired. An examination of the city charter does not bring to light any rule that requires the city to follow the seniority rule.

See, *Powers* v. *City of Asheville,* 203 N. C. 2 (164 S. E. 324); and *Leary* v. *Philadelphia,* 314 Pa. 458 (172 Atl. 459).

Plaintiffs contend that the discharge of four veterans from the department was in violation of the veterans' preference act, 1 Comp. Laws 1929, § 901, as amended. In *Smith* v. *Flint City Commission, supra,* we quoted with approval the following:

" 'Notwithstanding these statutory restrictions and qualifications of the power to remove, a veteran, holding a position or employment under a city, may be discharged without notice when it is done in good faith and because of lack of work for him to do, or for reasons of economy, or because the office or position has been abolished.' 1 Dillon, Municipal Corporations (5th Ed.), § 408."

In *Owen* v. *City of Detroit,* 259 Mich. 176, we said:

"The statute does not circumscribe the right of proper municipal officers to abolish positions or employments and thereby remove veterans 'in the absence of bad faith or subterfuge intended to defeat the statutory preference.' *Swantush* v. *City of Detroit,* 257 Mich. 389; *Smith* v. *Flint City Commission,* 258 Mich. 698."

Our conclusion is that the veterans' act has no application to the facts involved in this cause. The order of the lower court denying plaintiffs' petition for writs of mandamus is affirmed, without costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and TOY, JJ., concurred. POTTER, J., did not sit.