JOHN DeLURY, as President of the Uniformed Sanitationmen's Association, Local 831, I.B.T., et al., Respondents, v CITY OF NEW YORK et al., Appellants.

First Department, June 30, 1975

*Stanley Buchsbaum* of counsel *(W. Bernard Richland, Corporation Counsel),* for appellants.

*Charles G. Moerdler* of counsel *(Stroock & Stroock & Lavan,* attorneys), for respondents.

*Per Curiam.* Motion to vacate statutory stay of temporary injunction denied, without costs, conditioned upon perfection of the appeal from the order of injunction no later than July 7, 1975, with argument at 10 o'clock the following morning.

The statute providing for a stay (CPLR 5519, subd [a], par 1) expresses a public policy designed to protect a "political subdivision of the state," and such a stay is not lightly to be vacated. A reasonable probability of ultimate success in the action, as well as the prospect of irreparable harm, is *sine qua non* for injunction pending trial. The provisions of subdivision b of section 1173-4.3 of the Administrative Code of the City of New York seem at the very least to indicate that there is no merit to the argument of plaintiffs-respondents that the pertinent provision (art III, § 1) of the subject contract constitutes a

guarantee of employment during the term of the contract: "The City agrees to employ each of the employees for the period between July 1, 1974 and June 30, 1976 for 261 (8 hour) working days per annum at the respective annual compensations set forth in Schedule A of this Article III." The Administrative Code provides in pertinent part of the cited section: "Scope of collective bargaining; management rights * * * (b) It is the right of the city * * * to * * * relieve its employees * * * because of lack of work or for other legitimate reasons * * * Decisions of the city * * * on those matters are not within the scope of collective bargaining". To interpret the contract provisions as urged by respondents would be to ignore the Administrative Code. That interpretation may be said to be questionable as well on the basis of article III itself. It is headed "Salaries" and all its provisions relate solely to compensation in various forms, with not a word as to a guarantee or any form of tenure provision. The very quoted recital of days and hours may arguably be said to provide no more than a basis for measuring overtime. Nor does it seem that, in what is basically an action for alleged breach of contract, plaintiffs-respondents will be irreparably harmed, to a point beyond compensability by a money judgment, by a continued stay of the temporary injunction. This is not in anywise to predetermine the issues to be examined on argument of the appeal from the temporary injunction itself for what is before us is only the question of whether the statutory stay is to continue (CPLR 5518), and, as has been said, probability of success is a key factor. "The drastic remedy of temporary injunction is not to be granted unless a clear right to the relief demanded is established upon the moving papers." *(Park Terrace Caterers v McDonough,* 9 AD2d 113, 114.) No such clear right has been demonstrated.

MURPHY, J. (dissenting). I would grant the motion to vacate the stay, in order to maintain the *status quo* and avoid irretrievable, irreparable harm to plaintiffs, pending determination of the expedited appeal directed by the majority. The city is protected by the $1,000,000 bond posted by plaintiffs and will suffer no harm by waiting another week for determination of the appeal on the merits.

Moreover, by denying the application to vacate the automatic stay obtained by the city (CPLR 5519, subd [a], par 1), a serious question is raised as to the mootness of the appeal and our jurisdiction to hear it, because the firings will occur today.

Finally, since both sides are prepared to try the factual issues raised hereon immediately, I believe such trial should be directed to determine the intent of the parties in drawing the contractual clause in issue and the effect of the statute on such clause when there are other remedies available to the city to accomplish necessary economies.

Plaintiffs rely on section 1 of article III of this agreement for the proposition that they were hired for a guaranteed two-year period in exchange for their execution and delivery of an irrevocable waiver and release of their right to seek added compensation in accordance with the prevailing rate of wage provisions of section 220 of the Labor Law. Said provision states, in pertinent part: "The City agrees to employ each of the employees for the period between July 1, 1974 and June 30, 1976 for 261 (8 hour) working days per annum at the respective annual compensations set forth in Schedule 'A' of this Article III."

Defendants contend that the agreement was never intended to guarantee employment for plaintiff sanitation workers; and that, in any event, such contractual provision, even if so construed, would be invalid under subdivision b of section 1173-4.3 of the Administrative Code of the City of New York since the city cannot bargain away its right to "relieve its employees from duty because of lack of work or for other legitimate reasons."

Conceding, *arguendo,* that lack of money is a "legitimate reason", a serious factual issue is presented, in my view, as to whether the city may fire these plaintiffs and still retain provisional employees.

In sum, in light of the irreparable harm to these plaintiffs if the preliminary injunction is not reinstated (e.g., loss of health and hospital coverage, loss of dental insurance benefits, loss of life insurance benefits, possible loss of pension benefits, loss of death benefits and pension credit rights and loss of the right to disability retirement benefits and accidental disability benefits), compared to the limited possible injury to the city if the stay is vacated, orderly procedure and a right sense of fairness dictate that the stay be vacated and an expedited appeal or trial be directed.

KUPFERMAN, J. (dissenting). The court at Special Term granted a preliminary injunction restraining the defendant (City of New York and its officials) from firing members of the

Uniformed Sanitationmen's Association, which union has an agreement with the city providing that these employees are to work from July 1, 1974 to June 30, 1976. The city obviously cannot plead ignorance of its financial condition at the time this agreement was entered into. Only one member of the union has been hired since July 1, 1974 and is, therefore, the only one not protected of the 3,000 members involved who are being terminated.

Irreparable harm would come to anyone fired under these circumstances in the atmosphere of political jousting. Pension rights, life insurance and health insurance, among other things, are involved. This union agreement provision is unique. It covers some 13,000 employees (10,000 are sanitationmen) out of many hundred thousand city employees and cannot be lightly dismissed.

The order of Special Term granting the preliminary injunction should be continued pending trial and the CPLR 5519 (subd [a]) automatic stay by virtue of the appeal by the city should be vacated.

STEVENS, P. J., MARKEWICH and LUPIANO, JJ., concur in *Per Curiam* opinion; KUPFERMAN and MURPHY, JJ., dissent in separate opinions.

Motion to vacate CPLR 5519 (subd [a]) stay or for other relief denied, without costs, conditioned upon perfection of the appeal from the order of injunction no later than July 7, 1975, with argument at 10 o'clock the following morning.