JOHN DELURY, as President of and on Behalf of the Uniformed Sanitationmen's Association, Local 831, I.B.T., et al., Appellants, v CITY OF NEW YORK et al., Respondents.

First Department, March 9, 1976

*Charles G. Moerdler* of counsel *(Vivienne W. Nearing* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for appellants.

*Leonard Koerner* of counsel *(Stanley Buchsbaum, James G. Greilsheimer* and *L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for respondents.

LUPIANO, J. Plaintiffs (hereinafter referred to as the Sanitationmen's Association) brought the instant action to declare their rights under the collective bargaining agreement with the defendant City of New York (hereinafter referred to as the City) and for injunctive relief. The impetus to this lawsuit arose in the summer months of 1975, when the City an-

nounced plans to alleviate its fiscal crisis by, *inter alia,* laying off some 2,934 sanitationmen out of a work force in the Department of Sanitation of 13,841. The Sanitationmen's Association relies on section 1 of article III of the agreement which provides in pertinent part that "[t]he City agrees to employ each of the employees for the period between July 1, 1974 and June 30, 1976 for 261 (8 hour) working days per annum at the respective annual compensations set forth in Schedule 'A' of this Article III". It is their contention that this clause provides a guarantee of employment to each sanitationman employed by the City on the date he signs the "waiver and release" contemplated by article VII to evidence his relinquishment of rights under section 220 of the Labor Law. The City relies on subdivision b of section 1173-4.3 of the Administrative Code which provides in pertinent part that *"[i]t is the right of the city,* or any other public employer, acting through its agencies, *to* determine the standards of services to be offered by its agencies; determine the standards of selection for employment; direct its employees; take disciplinary action; *relieve its employees from duty because of lack of work or for other legitimate reasons;* maintain the efficiency of governmental operations * * * take *all necessary actions to carry out its mission in emergencies;* and exercise complete control and discretion over its organization and the technology of performing its work. *Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining,* but notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees, such as questions of workload or manning are within the scope of collective bargaining" (emphasis supplied). It is noteworthy that section 1173-4.3 is entitled "Scope of collective bargaining; management rights".

A brief history of this litigation is now set forth: the Sanitationmen's Association's motion for a preliminary injunction was granted by Special Term (TYLER, J.) on June 27, 1975, and the City appealed, thereby securing an automatic stay of Special Term's order (CPLR 5519, subd [a]). The motion by the Sanitationmen's Association to vacate the automatic stay was denied by this court on June 30, 1975, two Justices (KUPFERMAN and MURPHY, JJ.) dissenting on the basis of maintenance of the *status quo* to avoid irreparable harm *(DeLury v City of New York,* 48 AD2d 405). It was recognized by the entire Bench, either explicitly or implicitly, that a trial was neces-

sary to determine the intent of the parties in drawing the contractual clause in issue and the effect of the statute on such clause. Subsequently, on July 11, 1975, on the appeal from the granting of the preliminary injunction, this court reversed Special Term on the law and the facts and denied the motion for a preliminary injunction, with the same two Justices dissenting *(DeLury v City of New York,* 48 AD2d 595). The majority stressed (p 599) that the drastic remedy of temporary injunction is not granted unless a clear right to such relief is established and observed that there are "many issues of fact in the case which must be determined before the final rights and obligations under the contract in question can be determined". Among the delineated issues to be determined was "the meaning of section 1 of article III of the contract involved", "the effect, if any, of subdivision b of section 1173-4.3 of the Administrative Code" (p 600), and that a guaranteed employment contract "irrespective of the financial reverses which the city might suffer" is violative of public policy *(DeLury v City of New York, supra,* pp 599-601). The dissenters, although concluding that the preliminary injunction was proper, similarly agreed that a trial was warranted. After a nonjury trial before MERTENS, J., the first and third causes of action set forth in the complaint were dismissed and it was declared that the collective bargaining agreement did not provide for guaranteed employment.

Article III of the agreement is entitled "Salaries". There is no provision listed in the collective bargaining contract as "Job Security". It was found significant by the trial court (applying the rule of practical construction to the contract clause at issue) to contrast plaintiffs' interpretation of section 1 of article III as giving a job guarantee with the failure of the union at any time since 1949 in publications or elsewhere to assert that it had secured guaranteed job security as a result of said section and its predecessors. The trial court found as a fact that there was no discussion of the union claim of guaranteed job security under section 1 during the 1974 negotiations which culminated in the agreement. He also concluded that said section and its predecessors back to 1949 were never intended to impose on the city a contractual guarantee of job security, but were merely adopted to eliminate the cumbersome procedures of section 220 of the Labor Law and to establish a formula for compensation on the basis of an annual wage. There is support in the record for these

findings by the trial court. Indeed, in taking evidence with respect to the intent of the parties when they entered into this agreement, the Trial Justice was simply following the guidelines set forth by this court as above delineated.

Further, assuming that section 1 of article III is clear or unambiguous on its face, it is nevertheless subject to parol testimony explaining the intent of the parties when they drafted such provision because of the presence of the Administrative Code section cited above. This circumstance, observed in conjunction with the collective bargaining agreement, raises the issue of latent ambiguity. It is also noted that this litigation must pragmatically be viewed against the background of the well-publicized financial crises facing the City of New York. The time-honored contractual principles of frustration of contract and impossibility of performance raised by the spectre of a city unable to meet its contractual obligations imbue this entire area with broad policy considerations. Indeed, subdivision b of section 1173-4.3 of the Administrative Code may be construed as enunciating such public policy considerations. In *Matter of Schwab v Bowen* (80 Misc 2d 763, 765) it was noted that the Public Employment Relations Board has held on more than one occasion "that the reduction of a work force for economic reasons does *not* constitute a term or condition of employment and, so, is not a proper subject for collective bargaining between a public employer and an employee organization". That court was of the opinion that it would be highly improper to permit a municipality to commit itself to a particular number of employees for a multiyear period despite the economic condition of said municipality.

The reliance by the Sanitationmen's Association on *Kunz v City of New York* (286 App Div 252, affd 3 NY2d 834) is misplaced. Plaintiffs merely stress language *in the City's briefs* in that case which corroborates their contention that the City in entering into section 1 of article III guaranteed employment. Scrutiny of this court's opinion in *Kunz* shows that the determination was based on the conclusion that the City was wrong in 1945 in hiring provisionals to perform the work that would have been done by the plaintiffs (crane engineermen employed by the New York City Department of Sanitation). However, it was noted that the crane engineermen had failed to take action for some time to correct the wrong and to that extent had acquiesced in the situation. It was thus held that there was no breach of contract by the City

and judgment in favor of the crane engineermen was reversed. The Court of Appeals affirmed, without opinion.

Parenthetically it is noted that the rule *"salus populi est suprema lex"* (the welfare of the people is the highest law) involves a principle of police power that "amounts to a recognition that society has a right which corresponds to the right of self-preservation in the individual, and it rests upon necessity because there can be no effective government without it" (9 NY Jur, Constitutional Law, § 148). A municipality, in matters of local concern and premised on a proper delegation of police power, has no more power that the State to divest itself of the right to exercise that police power. As a corollary, it is recognized that rights of contract are "subject to the proper exercise of the police power of the state, and the constitutional protection afforded contracts does not bar a valid exercise of that power" (9 NY Jur, §§ 156, 172). The United States Supreme Court has declared that "[n]ot only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worthwhile,—a government which retains adequate authority to secure the peace and good order of society" *(Home Bldg. & Loan Assn. v Blaisdell,* 290 US 398, 435). On another occasion, the United States Supreme Court stated: "But into all contracts, whether made between States and individuals, or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the pre-existing and higher authority of the laws of nature, of nations or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur" *(Long Is. Water Supply Co. v Brooklyn,* 166 US 685, 692).

Subdivision b of section 1173-4.3 of the Administrative Code of the City of New York is limned against the background of the police power. At this point note is taken that the Court of

Appeals in *Syracuse Teachers Assn. v Board of Educ.* (35 NY2d 743) viewed collective bargaining under the Taylor Law as having broad scope with respect to the terms and conditions of employment, limited by plain and clear prohibition in the statute or decisional law (see, also, *Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Teachers' Assn.],* 37 NY2d 614, 616). This view in no way undercuts the impact of subdivision b of section 1173-4.3 of the Administrative Code and the public policy considerations militating against acceptance and enforcement of plaintiffs' interpretation of section 1 of article III of the agreement. To reiterate, said statute specifically and clearly removes from collective bargaining considerations the right of the public employer to retire its employees from duty because "of lack of work or for other legitimate reasons" and the right of the public employer to "take all necessary actions to carry out its mission in emergencies". To view this statute as at most removing the issues of the aforesaid rights from the area of mandatory bargaining, without, at the same time, placing them in the sphere of prohibited subjects of bargaining so that they become a permissible subject of bargaining, raises grave questions of public policy inferentially involving aspects of the police power. Only recently our brethren in the Second Department in cases involving the issue of whether a public employer granted certain of its employees absolute job security in collective bargaining agreements, held that such contractual provisions cannot serve to deprive the public employer of its power to abolish such job positions as, in its judgment, must be abolished by virtue of economic necessity *(Matter of Schwab v Bowen,* 51 AD2d 574; *Yonkers City School Dist. v Yonkers Federation of Teachers,* 51 AD2d 568; *Yonkers School Crossing Guard Union of Westchester Chapter v City of Yonkers,* 51 AD2d 594). Crucial to these holdings was the recognition of the fiscal crisis facing the public employer. In *Matter of Schwab,* the court declared: "Even were we to accept the concept that a public employer may voluntarily choose to bargain collectively as to a nonmandatory subject of negotiation, the public interest or welfare in this case demands that the public employer's job abolition power remain unfettered [citation]. Regardless of fault, the fact remains that the fiscal crisis facing the City of Long Beach *threatens its very ability to govern and to provide essential services for its citizens.* The city must not be stripped of its means of survival" (emphasis supplied). Clearly, the dire financial circumstances facing the

City of New York come within the phrase "other legitimate reasons" and arise to the *de facto* status of an emergency. To hold otherwise is to avoid reality. Indeed, the unprecedented financial crisis confronting this metropolis gives urgency to its quest to retain for itself and its citizens the character of a viable urban center, reflective of a high civilization and functioning democratic process. This quest prompts recall of Mr. Justice HOLMES' trenchant statement: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter" *(Hudson Water Co. v McCarter,* 209 US 349, 357).

Examination of the record and recognition of the impact of this court's prior decisions warrant the conclusion that Trial Term's determination must be upheld. Relevant to plaintiffs' claim that the City must discharge *all* provisional, exempt and noncompetitive employees before laying off sanitationmen, Trial Term pertinently observed that in this unprecedented financial crisis, no authority, statutory or otherwise, was presented mandating the judiciary to define the order of priority in layoffs. As a general proposition we agree with Justice MERTENS' declaration that the City's chief executive has the power to determine the order of priorities in the discharge of municipal employees.

Finally, plaintiffs-appellants contend that they were granted leave to place in issue their claim for restoration of $1,600,000 placed by them with the City as a bond pursuant to a stipulation entered into after this court reversed Justice TYLER's grant of preliminary injunctive relief and directed an immediate trial. They assert that they have the right to have this court consider their claim because they were granted leave to amend their complaint at trial. Examination of the transcript of the proceedings discloses that the trial court never allowed this claim. It merely granted the plaintiffs' motion to conform the pleadings to the proof to the limited extent of bringing the economic factors and lay-off factors up to date. It is patent that Trial Term was not charged with the duty of deciding issues with respect to the parties' rights to the $1,600,000.

The judgment of the Supreme Court, New York County (MERTENS, J.), entered August 1, 1975, should be affirmed, without costs and disbursements, and without prejudice to any

claims the union may be advised to assert under its agreement with the City of July 11, 1975, pertaining to the $1,600,-000.

KUPFERMAN J.P., MURPHY, BIRNS and LANE, JJ., concur.

Judgment, Supreme Court, New York County, entered on August 1, 1975, unanimously affirmed, without costs and without disbursements, and without prejudice to any claims the union may be advised to assert under its agreement with the City of July 11, 1975, pertaining to the $1,600,000.