## KARR v BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY

Docket No. 60194. Submitted June 3, 1982, at Lansing.—Decided August 25, 1982. Leave to appeal applied for.

Plaintiff Jon T. Karr is an assistant professor at Michigan State University. He, along with most other university employees, was subjected to a 2-1/2 day layoff authorized by the university board of trustees as the result of a financial crisis. The amount of pay representing the 2-1/2 days was to be withheld from Karr's pay in six equal installments. Karr brought an action in the Court of Claims against the Board of Trustees of Michigan State University and its individual members, seeking to enjoin the withholding. The Court of Claims, Jack W. Warren, J., granted summary judgment in favor of the defendants on the basis of a failure to state a claim upon which relief could be granted. Plaintiff appealed, alleging that the withholding of his pay constituted a breach of his employment contract. *Held:*

1. The university board of trustees, generally, has the authority to lay off employees during periods of financial crisis.

2. The trial court erred in granting summary judgment. Plaintiff's complaint alleged that he entered into a written contract with the university at a fixed salary. Where such a contract exists an employer may be held liable for breach of contract if it fails to pay the fixed amount. The existence of such a contract is a question of fact which may not be determined in passing upon a motion for summary judgment based on the failure to state a claim.

3. Employment contracts of the type alleged herein do not violate public policy, and the university's obligations in regard to such contracts should be treated the same as its other contractual obligations.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 61A Am Jur 2d, Pleading § 230 *et seq.*
[2, 5] 15A Am Jur 2d, Colleges and Universities §§ 5, 11.
[3, 5] 53 Am Jur 2d, Master and Servant §§ 28, 40.
[4] 53 Am Jur 2d, Master and Servant §§ 14-18.

1. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM.

A motion for summary judgment for failure to state a claim upon which relief can be granted challenges the legal sufficiency of the complaint and must be considered by an examination of the pleadings alone; a reviewing court must accept as true all well-pled facts in the complaint and determine whether the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. COLLEGES AND UNIVERSITIES — MICHIGAN STATE UNIVERSITY — UNIVERSITY EMPLOYEES.

The Board of Trustees of Michigan State University is empowered to fix the salaries of university employees and to remove employees when the interest of the university so requires, including a reduction in its work force for bona fide reasons of economy; therefore, as a general proposition, the university has the authority to order layoffs during periods of financial crisis (Const 1963, art 8, § 5; MCL 390.107; MSA 15.1127).

3. MASTER AND SERVANT — EMPLOYMENT CONTRACTS.

An employer is required to pay an employee a fixed amount or he may be held liable in an action for breach of contract where the employee enters into a contract with the employer whereby the employer agrees to pay the employee the fixed amount for his services.

4. CONTRACTS — EMPLOYMENT CONTRACTS — QUESTION OF FACT.

The existence of a contract for employment is a question of fact which may not be decided by a trial court in passing upon a motion for summary judgment based on a failure to state a claim upon which relief may be granted (GCR 1963, 117.2[1]).

5. COLLEGES AND UNIVERSITIES — EMPLOYMENT CONTRACTS — PUBLIC POLICY.

A contract of employment between a public university and a faculty member which requires the university to pay a fixed sum over a particular time in exchange for the faculty member's services does not violate public policy.

Jon T. Karr, *in propria persona.*

*Leland W. Carr, Jr.,* for defendants.

Before: DANHOF, C.J., and BEASLEY and J. P. SWALLOW,* JJ.

DANHOF, C.J. Plaintiff appeals as of right from an order of the trial court granting summary judgment in favor of defendants pursuant to GCR 1963, 117.2(1).

Plaintiff is an assistant professor of criminal justice at Michigan State University. On December 5, 1980, the board of trustees of the university (hereinafter defendant) approved a 2.5-day layoff for all university employees, except those performing essential services. Employees were given the option of having their pay loss by virtue of the layoffs deducted in a lump sum, or having the amount withheld in six equal monthly installments. Plaintiff chose the latter option and $35.65 was withheld in January, 1981, and each subsequent month for five months thereafter.

On February 6, 1981, plaintiff brought this action in the Court of Claims seeking to have the withholding enjoined. He claimed that his contract of employment with the university for the 1980-1981 academic year required that the university pay him a fixed sum of $17,839 and that the 2.5-day layoff constituted a breach of the agreement.

Defendant responded by claiming that the layoff was necessitated by a 30 million dollar cutback in state appropriations to the university and that the university was empowered to order the layoffs in the event of such a financial crisis.

The trial court, relying on *Fricke v Grand Rapids,* 278 Mich 323; 270 NW 697 (1936), agreed with defendant's argument and granted its motion for summary judgment.

A motion based on GCR 1963, 117.2(1) chal-

* Circuit judge, sitting on the Court of Appeals by assignment.

lenges the legal sufficiency of a complaint and must be considered by an examination of the pleadings alone. A reviewing court is obligated to accept as true all well-pled facts in the complaint and to determine whether the claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Trommater v Michigan,* 112 Mich App 459, 463; 316 NW2d 459 (1982).

In *Fricke v Grand Rapids, supra,* the city, faced with a serious financial crisis, decided to reduce substantially the number of municipal employees. Plaintiffs brought a mandamus action claiming that the city's action was unlawful. The trial court upheld the city's decision. The Supreme Court affirmed the trial court's ruling:

"Authorities universally sustain the proposition that a city can dismiss a civil service employee by abolishing the position which the employee holds. *Smith v Flint City Comm,* 258 Mich 698 [242 NW 814 (1932)], and cases cited therein; and that a city may abolish a position for *bona fide* reasons of economy, *Slavin v City of Detroit,* 262 Mich 173 [247 NW 145 (1933)]. It is conceded by plaintiffs that if an office or position in the city government is abolished for *bona fide* reasons of economy, the holder of that position is not entitled to a hearing before the civil service board under the civil service provisions of the city charter; and that the city manager is the person to decide how many patrolmen should be at any given time in the police department.

"Considering these general principles of law in connection with the charter provisions above mentioned, we come to the conclusion that the principal issue involved in this cause is the matter of good faith on the part of the city officials in making the dismissals complained of. We think the trial court came to the correct conclusion in finding an absence of bad faith on the part of the city officials in reducing the police force." 278 Mich 329-330.

We agree with the trial court that the above-cited cases support the university's contention that it may reduce its work force for bona fide reasons of economy. Const 1963, art 8, § 5, vests the university board of trustees with the authority to control the direction of all expenditures from the institution's funds. Furthermore, MCL 390.107; MSA 15.1127 empowers the board to fix the salaries of university employees and to remove employees when the interest of the university so requires. These provisions clearly demonstrate that, as a general proposition, the university does have authority to order layoffs during periods of financial crisis. However, despite the foregoing, we do not agree with the trial court's determination that the university was free to lay off the plaintiff in this case.

None of the above-cited cases involved the layoff or termination of employees who were covered by employment contracts which provided for a fixed term of employment or guaranteed the payment of a sum certain. Plaintiff's complaint alleges that he entered into a written agreement with the university whereby the university agreed to pay him the sum of $17,839 for the academic year which extended from October 1, 1980, through September 30, 1981. Where an employee enters into a contract with an employer whereby the employer agrees to pay the employee a fixed amount for his services, the employer is required to pay such amount or he may be held liable in an action for breach of contract. See *Pryor v Briggs Mfg Co,* 312 Mich 476, 482-483; 20 NW2d 279 (1945). Whether such a contract exists is a question of fact which may not be decided by the trial court in passing upon a motion for summary judgment based on GCR 1963, 117.2(1). *Paxson v Cass County Road*

*Comm,* 325 Mich 276, 282; 38 NW2d 315 (1949); *Hall v Detroit,* 383 Mich 571, 575; 177 NW2d 161 (1970).

Defendant contends that, even if plaintiff's contract of employment required the payment of a fixed amount, this Court's recent decision in *Crider v Michigan,* 110 Mich App 702; 313 NW2d 367 (1981), compels the finding that the university could unilaterally modify the terms of the agreement because of the serious financial crisis facing the university. We disagree. In *Crider, supra,* plaintiffs challenged a decision of the State Civil Service Commission subjecting them to a series of one-day layoffs during 1981. Although the Court ruled that the seriousness of the financial crisis which faced the state justified the commission's decision to order the layoff, the *Crider* decision does not otherwise support defendant's position. The employees who were subject to the layoffs discussed in *Crider, supra,* were not protected by a contract of employment which limited the right of the employer to order such layoffs. On the contrary, those employees who were protected by a collective-bargaining agreement which limited the ability of the state to order such layoffs were specifically exempted from the commission's order. With respect to the exemption, the Court stated the following:

"An employer such as the CSC is bound by any contractual agreement into which it has entered and such an employer would, in fact, commit an unfair labor practice if it unilaterally avoided any contractual obligation. By exempting from layoff only those employees covered by collective-bargaining agreements *that limit the right to lay off,* the CSC has merely attempted to insure that its contractual obligations are honored." 110 Mich App 722.

Therefore, rather than supporting defendant's claim that it had the right to order the layoff of plaintiff, *Crider, supra,* supports plaintiff's claim that no such authority existed.

Defendant claims that, even if it may otherwise obligate itself to provide job security to an employee for a fixed period of time, a governmental agency may not contract away its power to manage itself during a period of financial crisis. Therefore, it claims that a contractual provision which precludes it from ordering the layoff of its employees during such a period is void as against public policy. In support of its contention, defendant relies on *DeLury v City of New York,* 51 App Div 2d 288; 381 NYS2d 236 (1976). In *DeLury, supra,* New York sanitation workers were laid off due to serious financial difficulties facing the city. The workers claimed that the layoff violated their collective-bargaining agreement with the city which provided for guaranteed employment during the term of the contract. The Court denied the workers' claim, stating that a provision in the city code, which existed at the time the agreement was entered, precluded the city from entering into such an agreement. Defendant has pointed to no provision in the Michigan Constitution, or any statutory provision, similar to the provision involved in *DeLury, supra.* Since *DeLury, supra,* did not hold that a contractual provision for job security could not be given effect in the absence of such a provision, *DeLury, supra,* does not support defendant's claim.

Even if *DeLury, supra,* does support defendant's claim, its continued validity is suspect following *Yonkers Bd of Ed v Yonkers Federation of Teachers,* 40 NY2d 268; 386 NYS2d 657; 353 NE2d 569 (1976). In *Yonkers, supra,* the school district en-

tered into a collective-bargaining agreement with defendant which contained a job security clause and which required that disputes concerning the agreement be submitted to binding arbitration. In 1975, faced with sharp cuts in its budget made by the City of Yonkers, plaintiff decided to lay off a number of teachers. The teachers responded by filing a demand for arbitration. The school district brought an action to stay arbitration claiming that public policy rendered void the job security clause contained in the collective-bargaining agreement. The trial court agreed. It held that the city's power to discharge employees in the face of financial disaster must remain unfettered. The highest appellate court of New York reversed. It held that a job security clause contained in an employment contract entered into with a governmental agency is valid as long as it is explicit and of reasonable duration. The Court ruled that the contract, which was three years in duration and which expressly protected the teachers from abolition of their positions due to budgetary difficulties, was a binding obligation on the school district and that the dispute was subject to arbitration.

In the present case, while we agree with defendant that enforcement of the contract will cause the university some hardship, we do not agree that such an agreement violates public policy. A contractual agreement which remains binding on the university during times of economic difficulty insures that the employee need not fear being put out of a job. The benefits inherent in such an agreement extend not only to the employee, but also to the university. It insures that the university will be able to obtain qualified instructors whose decision whether to accept employment with the university will not be adversely affected

by concern that the agreement they enter into in good faith at the time that they accept employment will be subject to unilateral change any time thereafter that the Legislature decides to cut appropriations. Therefore, in our opinion, the university's obligations as they relate to contracts of employment do not merit different treatment than do its other contractual obligations. The decision of the trial court granting defendant's motion for summary judgment is therefore reversed.

Plaintiff also complains that his complaint stated a claim that the trustees' action in ordering the layoff constituted an impairment of the university's contractual obligations in violation of US Const, art I, § 10; Const 1963, art 1, § 10. Since the facts alleged in support of that claim, and the damages which are claimed as a result of the alleged violation, are identical to those claimed for the alleged breach of contract, we find it unnecessary to determine whether the claimed Contract Clause violation would otherwise state a valid cause of action.

Reversed and remanded. No costs, a public question being involved.