CRIDER v STATE OF MICHIGAN

Docket No. 57044. Submitted August 17, 1981, at Lansing.—Decided October 21, 1981. Leave to appeal applied for.

In December, 1980, Robert Crider, Joseph Koenig and George Gredda, individually and on behalf of similarly situated command officers with the Michigan State Police, and the Michigan State Police Command Officers Association brought, in Oakland Circuit Court, an action for injunctive relief against the State of Michigan, the Michigan Civil Service Commission and various state officials, departments and agencies, seeking an order restraining the implementation of the plan for one-day layoff for classified state employees as authorized by the Michigan Civil Service Commission's rules as amended and seeking such other relief as was deemed appropriate. The defendants moved for accelerated judgment on the basis that the circuit court lacked jurisdiction. Gene Schnelz, J., denied the motion for accelerated judgment, enjoined the defendants from taking any layoff action against the individual plaintiffs and the members of plaintiff association, and ordered that the plaintiffs be paid such compensation and benefits as they were entitled to but did not receive as a result of the January 2, 1981, layoff day. Defendants appeal. *Held:*

1. While the Court of Claims has exclusive jurisdiction over suits against public officials and agencies acting in their official capacities, the Court of Claims has jurisdiction only to award damages and has no equitable powers. Since plaintiffs sought equitable relief against the state by way of an injunction, the circuit court, rather than the Court of Claims, was the proper forum in which to bring their claim.

2. Judicial review of administrative decisions is limited to determining whether: (1) the agency was acting within its duly

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 20 Am Jur 2d, Courts §§ 33, 87.
[3] 2 Am Jur 2d, Administrative Law §§ 579-582.
[4] 2 Am Jur 2d, Administrative Law § 533.
[5-8] 15A Am Jur 2d, Civil Service § 55.
[9, 10] 15A Am Jur 2d, Civil Service § 47.
[11] 60 Am Jur 2d, Pensions and Retirement Funds § 64.

granted powers, (2) there was competent, material and substantial evidence on the record supporting the agency's decision, and (3) the record establishes that the agency abused its discretion by arbitrary action. A court may not substitute its judgment for that of an administrative agency acting within its duly granted powers.

3. The determination of the Michigan Civil Service Commission that the fiscal situation of the state was an emergency within the meaning of the commission's rules was supported by competent evidence on the record. The commission was thus justified in waiving the 30-day notice requirement contained in its rules and proceeding to amend its rules to provide for the one-day layoffs of classified state employees.

4. There being an absence of compelling evidence that the determination by the Department of State Police that only six command officers were performing essential services, the Court of Appeals will not set aside the department's determination that the remaining command officers were not exempt from the layoff plan for classified state employees as implemented by the amended rules of the Michigan Civil Service Commission.

5. The exemption from the layoff plan for classified state employees of employees covered by collective-bargaining agreements prohibiting such layoffs does not improperly encourage union membership, since such provision is not based upon the fact of union membership but rather upon the contractual provisions covering those employees.

6. The Michigan Civil Service Commission has authority under the state constitution to determine the number of hours worked by classified state employees. Since the commission's power to implement the layoff plan arose out of that authority, the provision in the state constitution relative to reduction of expenditures by executive order did not have to be satisfied.

7. The layoff plan did not violate the right to equal protection, since the exemption of employees covered by collective-bargaining agreements prohibiting such layoffs and employees performing essential services cannot be said to be the result of an arbitrary and unreasonable classification.

8. While the plaintiffs have a cognizable property interest in the continuity of their individual contracts of employment and thus a right to procedural due process before having that interest abridged, the grievance provisions of the commission's rules, which plaintiffs disdained to pursue, provide for a hearing satisfying due process requirements.

9. In the face of uncontroverted evidence that defendants

have taken steps to eliminate any effect the layoffs will have relative to any reduction of retirement benefits and the absence of any evidence of actual reductions in such benefits, the mere possibility of reductions in retirement benefits because of the layoffs does not establish a deprivation of the plaintiffs' property rights in such benefits without due process of law.

Reversed.

1. COURTS — COURT OF CLAIMS — JURISDICTION — PUBLIC OFFICIALS.

The Court of Claims has exclusive jurisdiction over suits against public officials acting in their official capacities as well as suits against state agencies or departments (MCL 600.6419[1]; MSA 27A.6419[1]).

2. COURTS — COURT OF CLAIMS — JURISDICTION — REMEDIES — EQUITY.

The Court of Claims has jurisdiction to award damages against the state but is without equitable powers; parties making a bona fide claim for injunctive relief against the state must bring such claim in a circuit court rather than the Court of Claims.

3. ADMINISTRATIVE LAW — APPEAL — COURTS.

Judicial review of administrative decisions is limited to determining whether the administrative agency was acting within its duly granted powers, whether there was competent, material and substantial evidence on the record supporting the agency's decision, and whether the record establishes that the agency has abused its discretion by arbitrary action; a court may not substitute its judgment for that of an administrative agency acting within its duly granted powers (Const 1963, art 6, § 28).

4. ADMINISTRATIVE LAW — FACTUAL DETERMINATIONS — EMERGENCY SITUATIONS — CIVIL SERVICE COMMISSION RULES.

A determination by the Michigan Civil Service Commission that the fiscal situation of the State of Michigan in December, 1980, was an emergency situation and that immediate austerity measures should be imposed was supported by competent evidence on the record and accordingly, the commission was justified, in accordance with its own rules, to waive the 30-day notice requirement normally required for a modification of the commission's rules (Mich Civil Service Comm Rule 35).

5. CIVIL SERVICE — STATE EMPLOYMENT — LAYOFFS — STATE POLICE — ESSENTIAL PUBLIC SERVICES.

A determination by the Department of State Police that only a

staff of six command officers were performing immediate essential public services such that they should be exempted from the one-day layoff plan for classified state employees instituted by the Michigan Civil Service Commission will not be set aside in the absence of evidence which compels the conclusion that all command officers are performing essential services.

6. CIVIL SERVICE — STATE EMPLOYMENT — LAYOFFS — EXEMPTION FROM LAYOFFS — UNION MEMBERSHIP — COLLECTIVE-BARGAINING AGREEMENTS.

The provision in the one-day layoff plan for classified state employees instituted by the Michigan Civil Service Commission exempting from such layoffs classified employees covered by a collective-bargaining agreement limiting the right of the state to make layoffs does not improperly encourage union membership, since the exemption is not based upon union membership but rather on the nature of the contractual provisions covering those employees.

7. CIVIL SERVICE — STATE EMPLOYMENT — LAYOFFS — CIVIL SERVICE COMMISSION — CONSTITUTIONAL LAW.

The one-day layoff program for classified state employees, involving a reduction of the number of hours worked by classified state employees rather than a reduction in the rate of pay, was instituted pursuant to the constitutional authority of the Michigan Civil Service Commission; the order instituting such plan did not have to comply with the requirements of the provision of the constitution relative to reduction of expenditures by executive order (Const 1963, art 5, § 20 and art 11, § 5).

8. CIVIL SERVICE — STATE EMPLOYMENT — LAYOFFS — EQUAL PROTECTION.

The one-day layoff program for classified state employees instituted by the Michigan Civil Service Commission was not violative of the right to equal protection, the exemption of those employees covered by contracts prohibiting such layoffs and those employees performing essential services not being arbitrary and unreasonable.

9. CONSTITUTIONAL LAW — EMPLOYMENT — PROPERTY RIGHTS — DUE PROCESS.

Command officers with the Michigan Department of State Police have a cognizable property interest in the continuity of their individual contracts of employment such that the interest cannot be abridged absent the presence of the procedural protections of due process.

10. Civil Service — State Employment — Layoffs — Due Process.
     The grievance provisions contained in the rules of the Michigan
         Civil Service Commission provide for a hearing satisfying due
         process requirements so that the one-day layoffs of classified
         state employees cannot be said to have violated the procedural
         due process rights of those employees subject to such layoffs.

11. Civil Service — State Employment — Layoffs — Retirement
     Benefits — Due Process.
     The possibility of potential reductions in retirement pay by state
         employees subject to the one-day layoff program instituted by
         the Michigan Civil Service Commission in the face of uncontro-
         verted evidence that state agencies have taken steps to elimi-
         nate any threat to those employees' base salaries for the
         purpose of retirement benefits and the lack of any evidence of
         actual reduction of such benefits does not amount to a depriva-
         tion of the employees' property rights without due process of
         law.

*Bushnell, Gage, Doctoroff & Reizen* (by *Martin M. Doctoroff* and *John K. Parker),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jann Ryan Baugh* and *Robert C. Ward, Jr.,* Assistants Attorney General, for defendants.

Amicus Curiae:

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanagh),* for Michigan State Employees Association.

Before: J. H. Gillis, P.J., and T. M. Burns and N. J. Kaufman, JJ.

T. M. Burns, J. Defendants appeal as of right a March 18, 1981, lower court order enjoining them from subjecting plaintiffs to a statewide program of one-day layoffs and directing them to compensate plaintiffs for a layoff that occurred on January 2, 1981.

Since 1979, the state government has initiated several voluntary layoff programs in an effort to ease the state's increasingly severe financial situation. Many members of the plaintiff command officers' unit participated in those programs. However, in 1980, various officials including the Governor felt that the voluntary programs failed to satisfactorily reduce payroll costs.

A task force, formed by the Governor, studied further cost reduction programs including an involuntary plan that would permit up to six layoffs of one day each for certain state employees and would reduce their corresponding bi-weekly pay for each pay period in which a one-day layoff occurred. Under the program neither the hourly rate of pay nor the employees' fringe benefits would be affected.

On November 26, 1980, a letter was received by the defendant State Personnel Director, who is the chief administrator of the defendant Civil Service Commission (hereinafter CSC), from the Office of State Employer. This letter proposed certain changes in the CSC rules that would, among other things, facilitate the one-day layoff scheme. On the same day, the State Personnel Director was notified by the Governor of his intention to request six one-day shutdowns of state government offices during the 1981 calendar year.

Soon thereafter, the State Personnel Director circulated to "all appointing authorities, personnel officers and recognized employee organizations" copies of the proposed amendments to the CSC rules. This notice indicated that all of the proposed rule changes would be on the agenda for the CSC meetings scheduled for December 18 and 19, 1980. On the day of the first scheduled CSC meeting, the Governor sent a second letter to the CSC formally

advising them of the involuntary layoff plan and requesting that the CSC modify its rules to accommodate the plan.

At the December 18 and 19 meetings, the CSC considered temporary modifications of its rules under the procedures set forth in CSC Rule 35, which provides:

"35.1 Temporary Modifications.—*Upon finding that modification or waiver of any of these rules, Commission regulations or procedures is reasonable, appropriate, lawful and necessary for the orderly and efficient administration of the State Civil Service, the Commission shall make such modification or waiver. Upon similar grounds, the State Personnel Director may temporarily modify or waive any of these rules, unless such waiver or modification shall be inconsistent with policies adopted by the Commission, and shall report such waiver or modification to the Commission for approval. If any employee, appointing authority or citizen believes such waiver or modification is arbitrary, capricious or otherwise unlawful, a grievance may be filed with the Commission, and the Commission will order such hearings as are appropriate for the resolution of such grievance.*

"35.2 Amendments.

"35.2a Publication.—Proposed revisions of these rules shall be circulated by the state personnel director to all appointing authorities and recognized employee organizations at least 30 days in advance of consideration for final approval by the commission. Such notice shall provide opportunity for comment and shall include the date and place of the meeting at which the commission intends final consideration.

"35.2b Final Consideration.—Rules which are not substantially altered as published shall become effective upon approval.

"If the course of final consideration the proposed revision as published is substantially altered, the commission may order that the rule as approved shall

again be published to appointing authorities and recognized employee organizations allowing 15 days from the date of publication for the filing of objections and shall not become effective for 30 days following such publication.

"35.2c Reconsideration.—The state personnel director is authorized to delay the effective date of such rule until the next meeting of the commission if objections filed merit reconsideration.

"35.2d *Emergency Action.—In emergency situations requiring immediate action, the commission may waive the requirements of notice and approve revisions of these rules, but only upon unanimous vote of a quorum and issuance of a statement justifying such waiver.*" (Emphasis added.)

The CSC determined that an emergency situation existed which required immediate action under Rule 35.2d and, therefore, waived the formal 30-day notice requirement for rule changes set forth in Rule 35.2a. The CSC then amended its existing rules by enacting new CSC Rule 38.1, which provides:

"Upon notice to the Commission from the Governor that he intends to request the appointing authorities lay off all or a portion of the state's classified employees one day, in order to avoid long-term layoffs in specific program areas in certain departments, the Commission shall consider a 72-hour pay period as a complete biweekly pay period for all purposes except compensation. *Employees affected are those determined by individual appointing authorities not to be providing immediate essential public services and not covered by collective bargaining agreement limiting the right to lay off.*

"Appointing authorities shall be responsible for providing each affected employee appropriate advance notice not to report to work. This section shall be invoked not more than six times during the fiscal year, and shall expire on September 30, 1981." (Emphasis added.)

None of the plaintiffs filed a grievance with the CSC pursuant to Rule 35.1 on account of Rule 38.1.

Neither the Governor nor the CSC has authority to lay off any state employees outside of their respective departments. Under the one-day layoff scheme, only department heads are authorized to lay off employees. Plaintiffs received notification of the first layoff day, January 2, 1981, by a LEIN message on December 22, 1981, nine days prior to the filing of this lawsuit.

On December 31, 1980, plaintiffs filed a complaint for injunctive relief in the Oakland County Circuit Court. On that day, an order was signed by the lower court judge directing defendants to show cause by January 8, 1981, why a restraining order should not be entered.

On January 2, 1981, approximately 47,000 state employees were laid off, saving the State of Michigan about $4,000,000 in salaries. The only employees exempted from the layoff were those covered by a previously existing collective-bargaining agreement limiting the right to lay off and those found by their respective department heads to be performing "immediate essential public services", under CSC Rule 38.1.

Michigan State Police troopers and sergeants are covered by a collective-bargaining agreement prohibiting layoffs and, thus, were exempted from the January 2, 1981, layoff. However, the plaintiff command officers, who are members of the State Police holding the rank of lieutenant or higher, are not covered by a collective-bargaining agreement and, as a result, nearly all of them, approximately 300, were laid off on January 2, 1981. Only six command officers were exempted from the layoffs: three lieutenants on separate eight-hour shifts at the State Police headquarters in East

Lansing, two shift commanders assigned to Detroit Post No. 29, and one lieutenant post commander at Charlevoix. These six officers were deemed by the Department of State Police to be performing "immediate, essential services". Those who were assigned to work were paid at their ordinary rate of pay and not given overtime pay unless otherwise qualified for it.

A hearing to show cause why an order should not enter restraining defendants from laying off plaintiffs was set for January 14, 1981. On January 9, 1981, defendants moved for accelerated judgment. The motion was premised on three grounds: that the circuit court lacked jurisdiction and this action should have been brought in the Court of Claims, that the plaintiffs had failed to exhaust appropriate administrative remedies of filing a grievance under CSC Rule 35, and that plaintiffs had not shown irreparable harm. The trial judge took the motion for accelerated judgment under advisement. On January 16, 1981, the trial judge granted plaintiffs' motion for a temporary restraining order.

On March 19, 1981, the trial judge disposed of all pending motions. The judge denied defendants' motion for accelerated judgment, enjoined defendants from subjecting plaintiffs to any further one-day layoffs, directed defendants to pay back pay to plaintiffs for the January 2, 1981, layoff day, and, finally, issued a written opinion holding that the CSC Rule 38.1 was "arbitrary and capricious as applied to plaintiff command officers". Defendants now appeal.

Defendants first argue that the circuit court lacked subject matter jurisdiction over this controversy and claim that the Court of Claims Act, MCL 600.6401 *et seq.;* MSA 27A.6401 *et seq.,* vests

exclusive jurisdiction over all actions against state agencies and officials in the Court of Claims.

The applicable section of the Court of Claims Act setting forth the power and jurisdiction of the Court of Claims is § 6419, MCL 600.6419; MSA 27A.6419. It provides:

"(1) Except as provided in section 6440 [MCL 600.6440; MSA 27A.6440], the jurisdiction of the court of claims as conferred upon it by this chapter over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies, shall be exclusive. * * * The court has power and jurisdiction:

"(a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms or agencies."

As defendants point out, this act gives the Court of Claims jurisdiction over claims against state officers acting within their official capacities as well as jurisdiction over claims against state agencies themselves. *Grunow v Sanders,* 84 Mich App 578; 269 NW2d 683 (1978), *Abbott v Secretary of State,* 67 Mich App 344; 240 NW2d 800 (1976), *Roberts v Michigan,* 45 Mich App 252; 206 NW2d 466 (1973). However, the exclusive nature of the jurisdiction of the Court of Claims pertains only to claims for money damages. In *Paquin v Northern Michigan University,* 79 Mich App 605, 607; 262 NW2d 672 (1977), this Court observed:

"Since the Court of Claims *has exclusive subject matter jurisdiction over a money damage claim against a state instrumentality,* the circuit court is not a court with proper subject matter jurisdiction over plaintiff's claim." (Emphasis added.)

On the other hand, courts of this state have repeatedly held that the Court of Claims does not have jurisdiction over matters of equity, *Dorfman v State Highway Dep't,* 66 Mich App 1; 238 NW2d 395 (1975), and that the Court of Claims cannot issue declaratory judgments, *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960). As our Supreme Court noted in *Advisory Opinion on Constitutionality of 1976 PA 240,* 400 Mich 311, 320; 254 NW2d 544 (1977):

*"The Court of Claims has jurisdiction to award damages but it is without equitable powers.* Parties who pursue their contract claims in that court are restricted in the nature of the remedy they may seek." (Emphasis added.)

Thus, the traditional rule in the state is that plaintiffs who seek equitable forms of relief must file their claims in the various circuit courts of this state and not the Court of Claims. Defendants, however, contend that two recent opinions have altered this traditional rule: *Greenfield Construction Co, Inc v Dep't of State Highways,* 402 Mich 172; 261 NW2d 718 (1978), and *Grunow v Sanders, supra.*

In *Greenfield,* several justices of the Supreme Court apparently were willing to leave open the possibility that under the language of recent amendments to the Revised Judicature Act, MCL 600.9901 *et seq.;* MSA 27A.9901 *et seq.,* the Court of Claims may have the power to render declaratory judgments. Their observation appears in a footnote to Justice RYAN's opinion at 402 Mich

172, 198, fn 10.[1] The gist of this footnote is the observation that certain restrictive language of the former declaratory judgment act, MCL 691.501 *et seq.;* MSA 27.501 *et seq.,* which was in effect at the time of the Court's decision in *Taylor v Auditor General,* had been repealed and that under the new language of the statute the Court of Claims could conceivably have the power to render declaratory judgments. However, given that the *Greenfield* opinion does not recognize any equity jurisdiction in the Court of Claims, it would not be proper for us to conclude that the Court of Claims possesses exclusive jurisdiction over equitable as well as legal actions against state agencies and officers.

Similarly, in *Grunow* this Court, relying solely on the foregoing footnote to the *Greenfield* opinion, held that the Court of Claims can render declaratory judgments in the context of a class action suit in tort against state officers for monetary damages. Inasmuch as the essence of the claim in *Grunow* was an action for damages, that case does not reverse the established rule prohibiting the Court of Claims from exercising equitable jurisdiction.

Plaintiffs in this case seek equitable relief

[1] "In *Taylor v Auditor General,* this Court declared that the Court of Claims was without the jurisdiction to grant a declaratory judgment. This conclusion was premised on the fact that the declaratory judgment act did not authorize the rendition of declaratory judgments by any and all courts of record, but only those which had a law side and an equity side. Since the Court of Claims 'does not possess the broad and inherent powers of a constitutional court of general jurisdiction', in other words does not have an 'equity side', it could not render a declaratory judgment.

"With the repeal of the declaratory judgment act, 1948 CL 691.501, by the Revised Judicature Act, MCL 600.9901; MSA 27A.9901, the former language which restricted the power to render declaratory judgments to those courts which have both an equity side and a law side is no longer controlling. However, because the power of the Court of Claims is not at issue in this case, we decline to decide whether the Court of Claims is now empowered to render declaratory judgments."

against the CSC and other state agencies and officers. Because the Court of Claims lacks equity jurisdiction, it follows that plaintiffs acted properly in not filing this action in that court. In final passing, we note that Const 1963, art 11, § 5 grants jurisdiction to the circuit courts of this state to render injunctive relief against the CSC in cases such as the present one where plaintiffs allege that the CSC has exceeded its constitutional powers. Accordingly, this action for injunctive relief was properly brought before the circuit court.

We are not persuaded by defendants' contention that plaintiffs' complaint was not a bona fide request for injunctive relief or their argument that this action was a disguised claim for monetary damages. This action was brought in December, 1980, before January 2, 1981, the first scheduled layoff date. Plaintiffs sought a restraining order to prevent the layoffs. These facts support the inference that plaintiffs genuinely sought injunctive relief to prevent imposition of the layoff program and that they invoked the equity jurisdiction of the circuit court in good faith. Therefore, we hold that the circuit court did have subject matter jurisdiction over this controversy.

Const 1963, art 11, § 5 gives the CSC plenary power to regulate the conditions of employment for classified state employees such as plaintiffs:

"The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performances exclusively on the basis of merit, efficiency and fitness, the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personal trans-

actions and regulate all conditions of employment in the classified service."

As is true with the decisions of most administrative boards and commissions, the scope of judicial review of the decisions of the CSC is limited. A court of this state cannot substitute its judgment for that of an administrative board or commission acting within its duly granted powers. *O'Connell v Dearborn Police & Fire Pension Board*, 334 Mich 208; 54 NW2d 301 (1952). Indeed, even the Legislature is without power to regulate the internal procedures of the CSC. *Viculin v Dep't of Civil Service*, 386 Mich 375; 192 NW2d 449 (1971). An administrative decision is subject to reversal by the courts of this state only where the evidence firmly establishes that the agency has abused its discretion by arbitrary action. *Evans v United States Rubber Co*, 379 Mich 457; 152 NW2d 641 (1967).

Thus, given the broad scope of the CSC's constitutional authority to regulate the compensation and working conditions of classified state employees, defendants correctly argue that the CSC's decisions regarding the compensation of covered employees are entitled to at least as much deference as decisions of other administrative commissions. This is particularly true in light of the above-quoted section of the state constitution that gives the CSC great discretion over most, if not all, aspects of state civil service employment. Accordingly, the scope of judicial review of CSC decisions is exceedingly narrow.

An administrative decision must be upheld by the courts of this state if it is supported by "competent, material and substantial evidence" on the record, Const 1963, art 6, § 28, even in cases such

as this one that involved the temporary suspension of the agency's rules and regulations. *International Union of Civil Rights & Social Service Employees v Civil Service Comm,* 57 Mich App 526; 226 NW2d 550 (1975).

There are five principal reasons advanced by plaintiffs and the amicus curiae, Michigan State Employees Association, as to why the one-day layoff plan is invalid: it violates the CSC's own rules and regulations, it amounts to an unfair labor practice, it violates the Michigan Constitution, it violates the right to equal protection of the employees laid off pursuant to it, and it violates the employees' right to due process. We shall consider each of these arguments in turn.

With respect to the argument that the layoff program violates the CSC's own rules and regulations, the contentions of the plaintiffs and the amicus curiae can be broadly summarized into three categories: (1) the CSC's procedure for adopting Rule 38.1, which embodies the layoff scheme, did not comply with Rule 35 of the CSC's rules and regulations governing temporary modification of CSC rules, (2) the layoff program violates preexisting CSC rules such as Rule 8 providing for an 80-hour pay period, Rule 17 providing for minimum salaries, and Rules 21 and 29 setting forth a complex employee preference schedule to be followed in cases of layoffs, and (3) the defendant Department of State Police failed to comply with CSC Rule 38 in applying the layoff plan to the plaintiff command officers.

The most significant of these three contentions is the first. If the adoption of Rule 38 complied with the procedural requirements of Rule 35, then any modifications to the preexisting rules which resulted from the enactment of Rule 38 were

validly made and the second aforementioned contention of plaintiffs would be meritless.

Plaintiffs and the amicus curiae argue that in adopting Rule 38 the CSC failed to comply with Rule 35 in two respects: (1) it failed to give the required 30-day notice for proposed revisions, a requirement of Rule 35.2a; and (2) no actual emergency existed under Rule 35.2d that would have justified the waiver of the 30-day notice requirement.

Defendants do not contest the failure of the CSC to comply with the notice provision of Rule 35.2a. That rule requires the State Personnel Director to circulate proposed rule revisions to "all appointing authorities and recognized employee organizations at least 30 days in advance of consideration for final approval by the commission". In this case, the CSC rule modifications embodying the one-day layoff plan were not circulated until November 26, 1980, only 22 days before the CSC convened to consider and enact the proposed rule changes. Therefore, unless an "emergency situation requiring immediate action" existed in this case, which would entitle the CSC to waive the 30-day notice requirement of Rule 35.2a, the rule revisions of Rule 38 were not validly adopted and must be set aside.

At the December 19, 1980, CSC hearing in which Rule 38 was formally adopted, CSC Chairman Michael Dively read into the record the CSC findings justifying the existence of an emergency situation requiring immediate action. In particular, Chairman Dively noted that "the entire calendar year will be one of fiscal crisis for the state", that "revenue predictions are far from optimistic", and that "tight finances will be the prevailing condition for the foreseeable future". Neither plaintiffs

nor the amicus curiae have contested these findings and neither of these parties nor their individual members ever filed any grievance challenging them pursuant to Rule 35.1. Indeed, the joint statement of facts filed by the parties in the circuit court concedes that there was a severe financial crisis facing the state at the time that the CSC determined an emergency situation existed:

"Approximately two years ago the economic condition of the State of Michigan began to deteriorate. At that time, budget cuts were being instituted at all levels of state and local government. Severe budget cutting has continued to this day."

Thus the record does establish that the need for broad scale fiscal relief for the state was acute. The important question then became when would the austerity measures be imposed?

Without question, the severe financial crisis that gave rise to the need for the one-day layoff scheme was already upon this state when the CSC convened for the December, 1980, meeting. That crisis was certain to endure, if not worsen, for the reasonably foreseeable future. Therefore, there was some basis for commencing the layoff program as soon as possible.

Approximately two weeks after the December 19, 1980, meeting at which Rule 38 was adopted by the CSC, state employees were given a paid holiday on Thursday, January 1, 1981, for New Year's Day. The day following this paid holiday, Friday, January 2, 1981, immediately preceded a weekend and was deemed a particularly appropriate day for the first of the six scheduled employee layoffs. Given the fact that January 2, 1981, was an especially good day upon which to schedule one of the employee layoffs and the fact that there were

fewer than 30 days between that first layoff date and the December 19, 1980, meeting, a reasonable person could accept this evidence as sufficient to support the CSC's finding that there existed an emergency situation justifying waiver of the 30-day notice requirement. *Atkins v Dep't of Social Services,* 92 Mich App 313; 284 NW2d 794 (1979), *International Union of Civil Rights & Social Services Employees v Civil Service Comm, supra.* This Court is not free to substitute its judgment on this matter for that of the CSC. *O'Connell v Dearborn Police & Fire Pension Board, supra, Viculin v Dep't of Civil Service, supra.* Because the CSC found that an emergency situation existed and because there is competent, material and substantial evidence in the record to support that finding, the 30-day notice requirement was properly waived under CSC Rule 35.2b.

It follows from our finding that the CSC did comply with Rule 35 governing temporary modification of CSC rules when it adopted Rule 38.1 that the CSC did not violate Rule 8, 17, 21 or 29 in instituting the one-day layoff program. These rules were legitimately modified by promulgation of Rule 38.1.

Nor is there any merit to the contention that the defendant Department of State Police violated Rule 38.1 by applying the layoff program to the plaintiff command officers.

Rule 38.1 provides that employees affected by the layoff plan shall be those determined by the appointing authority not to be providing immediate essential public services and not covered by a collective-bargaining agreement limiting layoffs. The defendant Department of State Police is the appropriate appointing authority vested with power to determine whether the plaintiff officers

were performing immediate essential public services pursuant to Rule 38.1. The department determined that only a skeletal staff of six command officers, who usually were on duty on holidays and weekends, were performing immediate essential public services such that they should be exempted from the layoff scheme. At no place in the lower court record did the trial judge point to any evidence that would support his finding that all of the command officers were performing immediate essential public services. Inasmuch as neither plaintiffs nor the amicus curiae have set forth any convincing argument based on the evidence which compels a conclusion that the full complement of the plaintiff command officers were necessary on January 2, 1981, we conclude that the defendant Department of State Police did not violate Rule 38.1 in applying that rule to the command officers.

Similarly, we reject the argument advanced by plaintiffs in the lower court that the one-day layoff plan constitutes an unfair labor practice.

An employer must assume a posture of complete neutrality with regard to union membership. That is, the employer must do nothing that would either advance or inhibit union organizing and must refrain from all practices that either encourage or discourage membership in labor organizations. *Smigel v Southgate Community School Dist,* 388 Mich 531, 539; 202 NW2d 305 (1972). Plaintiffs contend that, by exempting from layoff classified civil servants covered by labor contracts, defendants have shown a manifest preference for the interests of unionized public employees. We disagree.

The criteria in Rule 38.1 underlying the exemption from layoff of certain employees covered by collective-bargaining agreements was not on the

basis of union membership per se; rather, it was on the existence of a provision in the collectively bargained-for contract forbidding such layoffs. An employer such as the CSC is bound by any contractual agreement into which it has entered and such an employer would, in fact, commit an unfair labor practice if it unilaterally avoided any contractual obligation. By exempting from layoff only those employees covered by collective-bargaining agreements *that limit the right to lay off,* the CSC has merely attempted to insure that its contractual obligations are honored. Thus the layoff plan adopted by the CSC does not violate *Smigel* by favoring or discriminating against union members. It imposes a one-day layoff on all state employees regardless of union membership if they are not providing immediate essential services and if they are not covered by a collective-bargaining agreement prohibiting such layoffs. Therefore, Rule 38.1 is neutral with regard to union membership and does not constitute an unfair labor practice.

We also find to be unpersuasive the argument that the one-day layoff plan violates the Michigan Constitution because it impermissibly reduces the salary of state officers contrary to Const 1963, art 11, § 5, and because the Governor and the CSC failed to comply with the conditions of Const 1963, art 5, § 20 authorizing reductions in appropriations in the event of a fiscal crisis when instituting the layoff program.

Const 1963, art 5, § 20 provides:

"No appropriation shall be a mandate to spend. The governor, with the approval of the appropriating committees of the house and senate, shall reduce expenditures authorized by appropriations whenever it appears that actual revenues for a fiscal period will fall below the revenue estimates on which appropriations for that

period were based. Reductions in expenditures shall be made in accordance with procedures prescribed by law. The governor may not reduce expenditures of the legislative and judicial branches or from funds constitutionally dedicated for specific purposes."

, Defendants concede that the Governor did not receive the approval of the appropriating committees of the House and the Senate for the salary reductions apparent in the layoff program. They further admit that the Governor does not have the authority to either personally order the layoff of state classified employees or to reduce appropriations for their salaries. Defendants contend, however, that the CSC does have authority to order or request departments to lay off classified state employees under Const 1963, art 11, § 5.

This latter constitutional provision confers upon the CSC plenary power to "fix rates of compensation for all classes of positions * * * and regulate all conditions of employment in the classified service". The CSC's constitutional authority to regulate the conditions of employment in classified civil service is independent from and not limited by the provisions of Const 1963, art 5, § 20. Accordingly, if the CSC's implementation of the layoff plan was permissible under art 11, § 5, it is not necessary for us to consider the effect of the failure of the Governor to comply with the conditions of art 5, § 20 of the Michigan Constitution. This follows by virtue of the fact that it is the Civil Service Commission, and not the Legislature, that is given "supreme power" over civil service employees under art 11, § 5. *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343; 184 NW2d 247 (1970).

Our review of the record convinces us that the one-day layoff program instituted by the CSC was

within the authority delegated to that agency under art 11, § 5. The effect of the layoff program is to reduce the actual number of hours worked in certain pay periods by classified state employees. The number of hours in a pay period is a condition of employment that is subject to the constitutional supremacy of the CSC. *Welfare Employees Union v Civil Service Comm, supra.* Nothing in the Michigan Constitution or in the rules and regulations of the CSC requires classified state employees to work any particular number of hours in a pay period or requires that they receive compensation for a specified number of hours during any fiscal year.

Contrary to what plaintiffs and the amicus curiae argue on appeal, this case is distinguishable from *Brown v Dep't of Military Affairs,* 386 Mich 194; 191 NW2d 347 (1971), *cert den* 405 US 990; 92 S Ct 1256; 31 L Ed 2d 457 (1972). In that case, the Supreme Court rejected a pay reduction plan wherein the number of "duty days", upon which plaintiffs' pay was based, were reduced without regard to the number of actual days worked:

"Both the trial court and the Court of Appeals agreed that the action of the quartermaster and the state military board in promulgating a different pay scale than that established by statute, was unauthorized and illegal.

"We agree. *The device of calling the plaintiff for less than 30-duty days per month was sheer artifice, and had no relation to the actual days worked by the plaintiff.* Similarly, the reduction of longevity was a mere subterfuge designed to subvert the statutory pay scale and frustrate the intent of the Legislature.

"Salaries of public officers which are established by law are not determined by contract or agreement between the parties. The public employer cannot pay

more than the law allows. The public employee cannot accept less." *Id.,* 220. (Emphasis added.)

The defect in the pay reduction scheme in *Brown* was that it had the effect of reducing the rate of pay. In the present case, however, plaintiffs' hourly rate of pay has not been reduced. Here, the amount of reduction in pay corresponds directly to the amount of reduction in actual hours worked. Thus, plaintiffs' reduction in pay was not an "artifice" unrelated to the number of hours actually worked. In this significant respect then, the Supreme Court opinion in *Brown* is distinguishable and not controlling in the instant matter.

Because Const 1963, art 11, § 5 vests in the CSC exclusive authority to establish the conditions of employment for public employees and because neither plaintiffs nor the amicus curiae have cited any other constitutional provisions that the CSC may have violated in reducing the number of hours worked by plaintiffs, there is no merit to the contention that the one-day layoff program violates the constitution of this state.

The plaintiffs and the amicus curiae next argue that by exempting employees deemed to be providing essential services by their department heads, those covered by collective-bargaining agreements limiting the right to lay them off, and those employees whose salaries are reimbursed to the state by the federal government, the one-day layoff program created classifications so arbitrary and unreasonable that they violate plaintiffs' rights to equal protection under the Fourteenth Amendment.

In *Tomlinson v Tomlinson,* 338 Mich 274, 278; 61 NW2d 102 (1953), the Supreme Court observed

that "the guaranty of equal protection of the law is not one of equality of operation or application to all citizens of the state or nation, but rather one of equality of operation or applicability within the particular class effected, which classification, of course, must be reasonable".

As this Court stated in the *Welfare Employees Union v Civil Service Comm, supra,* 353: "The equal protection guarantees do not bar all discrimination. They prohibit only arbitrary and capricious discrimination which is not reasonably related to legitimate governmental objectives."

It is the burden of one challenging a classification on the ground that it violates equal protection of the laws to show that the classification has no reasonable basis. *Wilkins v Ann Arbor City Clerk,* 385 Mich 670; 189 NW2d 423 (1971), *International Union of Civil Rights & Social Service Employees v Civil Service Comm, supra.*

We do not agree with plaintiffs, the amicus curiae, and the trial judge that the three classifications of employees exempted from the layoff program are unreasonable or arbitrary. The first classification, pertaining to those classified civil servants who are covered by a collective-bargaining agreement limiting the right to layoff, is related to the objective of honoring the government's contractual obligations. Plaintiffs cannot reasonably contend that the object of this exemption is not a legitimate one. Had the CSC chosen to implement a program that would have breached its bargaining agreements with certain employees, it would have been exposed to the costs of defending an unfair labor practice charge as well as charges of breach of contract.

The second classification set forth in the layoff program, the exemption of employees performing

"immediate essential public services" also is reasonably related to a legitimate governmental objective. Indeed, the reasoning behind this exemption appears to be so obvious as to need no comment. The CSC as well as the various other departments of state government affected by the layoff program have an acute interest in insuring that essential public services are provided regardless of the need for fiscal austerity. There is nothing in the record that would even suggest that the staff of six command officers who normally are on duty on holidays and weekends are not performing immediate essential public services. Nor does the record support the conclusion that it was necessary for the health, safety or welfare of the citizens of this state to have a full complement of command officers on duty on the date in question, January 2, 1981.

The third and final classification established by the layoff program exempts state employees whose salaries are fully reimbursed by the federal government. This classification is reasonably related to the purpose of the layoff program, the objective of fiscal austerity. Because the state government would save no money by laying off employees whose salaries are paid for by the federal government, including such employees in any layoff program would not further its goals. Further, the CSC has a legitimate interest in retaining as many state employees as possible on the job when these layoff days occur in order to ensure that the state government will continue to run efficiently. Thus, it is our opinion that each of these classifications established by the layoff program is reasonably related to a legitimate governmental objective and that plaintiffs' rights to equal protection of the laws have not been violated.

In the final argument briefed by plaintiffs in this appeal, they argue that the layoff program is unconstitutional because it violates their right to due process. We agree that plaintiffs have a cognizable property interest in the continuity of their individual contracts of employment; an interest that cannot be abridged absent the presence of the procedural protections of due process. *Arnett v Kennedy,* 416 US 134; 94 S Ct 1633; 40 L Ed 2d 15 (1974), *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972), *Board of Regents v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972).

In ascertaining whether a property interest in employment has been created that is constitutionally cognizable, a person must have more than a mere abstract need or desire for it, he or she must have a legitimate claim of entitlement to it. In the present case, the trial judge properly held that plaintiffs have a constitutionally recognized property interest in their contracts of employment.

Once it is ascertained that the standards of due process apply, a problem then arises as to what process is due and appropriate. *Goss v Lopez,* 419 US 565, 577; 95 S Ct 729; 42 L Ed 2d 725 (1975), *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972). As the United States Supreme Court stated in *Cafeteria & Restaurant Workers Union v McElroy,* 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961): "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."

Due process requires only that there be notice and a "hearing appropriate to the nature of the case", *Mullane v Central Hanover Bank & Trust*

*Co,* 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950), and that the hearing be held "at a meaningful time and in a meaningful manner". *Armstrong v Manzo,* 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965). The formal and procedural requisites of the hearing may vary "depending upon the importance of the interests involved and the nature of subsequent proceedings". *Boddie v Connecticut,* 401 US 371, 378; 91 S Ct 780; 28 L Ed 2d 113 (1971). Further, as this Court held in *Detroit Board of Education v Parks,* 98 Mich App 22, 41; 296 NW2d 815 (1980): "Of course, due process does not require a prior hearing in every case of deprivation of a property right."

In the present case, due process would require that plaintiffs be given an opportunity to be heard regarding their inclusion in the layoff program. However, it was not necessary that this hearing be held prior to the time that the CSC took emergency action on the crisis before it.

CSC Rule 35.1 provides that if an employee, an appointing authority or a citizen believes that the CSC's waiver or modification of its rules was arbitrary, capricious, or otherwise unlawful, a grievance may be filed with the CSC, which must order such hearings as are appropriate for the resolution of the grievance. Thus, Rule 35.1 provided a forum for hearings regarding plaintiffs' inclusion in the layoff program. The grievance hearing provided for in this rule would have been appropriate to determining whether plaintiffs should have been included in the layoff program. Therefore, plaintiffs have been afforded adequate procedural due process. Because the absence of any grievance hearing in this case was not due to any action of the defendants, but rather to plaintiffs' failure to request them, the trial judge erred in finding that

plaintiffs were deprived of their right to procedural due process of law.

Nor do we find merit in the contention that plaintiffs were deprived of substantive due process because their retirement benefits may be affected by the layoff program. Any deprivation at this time is purely speculative and none of the plaintiffs have shown any actual reduction in their retirements benefits. Rather, they can cite only the possibility that under applicable statutes and rules as presently written there may be a future reduction in their retirement benefit salary base. Given the uncontroverted evidence that defendants have taken steps by way of proposed statutory amendments and rule changes to eliminate any threat to plaintiffs' retirement salary base, and the lack of any evidence of actual deprivation of benefits, the trial judge erred in holding that plaintiffs' potential retirement pay reduction amounted to an unconstitutional deprivation of property.

The March 18, 1981, lower court order enjoining defendants from including the plaintiff state police command officers in the state's one-day layoff program and ordering defendants to give back pay to those command officers laid off on January 2, 1981, is reversed. The layoff program as instituted does not violate the United States or Michigan Constitutions, the laws of this state, or the rules and regulations of the Civil Service Commission.

Reversed.